**Barry J. QUINONES, Appellant,**

v.

**UNITED STATES of America, and United States Bureau of Narcotics and Dangerous Drugs and its Agents and Employees.**

No. 73-1538.

United States Court of Appeals,
Third Circuit.

Argued Jan. 14, 1974.

Decided March 6, 1974.

Robert J. Cindrich, Lawrence G. Zurawsky, McVerry, Baxter, Cindrich & Mansmann, Pittsburgh, Pa., for appellant.

Richard L. Thornburgh, U. S. Atty., Jay C. Waldman, Asst. U. S. Atty., Pittsburgh, Pa., for appellees.

Before SEITZ, Chief Judge, and KALODNER and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal from an order granting the dismissal of a complaint filed under the Federal Tort Claims Act, 28 U.S.C. § 1346(b),[1] requires us to decide whether Pennsylvania courts would be hospitable to a tort claim, sounding in negligence, for damages resulting from an employer's failure to use due care in maintaining the record of an employee's performance and work history, and whether such a claim would be barred by the "libel-slander" exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(h).[2] Reasoning that the interest sought to be protected by the plaintiff—freedom from injury to one's image or reputation—was identical to that protected by the defamatory torts, the district court concluded that the plaintiff's claim was barred by Section 2680(h) since it was "purely and simply one of libel and slander." The plaintiff, a former agent of the Bureau of Narcotics and Dangerous Drugs (BNDD), has appealed. We reverse.

In considering defendants' motion to dismiss, the district court was required to take as true all the allegations of the complaint. Cruz v. Beto, 405 U.S. 319,

1. 28 U.S.C. § 1346:

(b) [T]he district courts . . . , shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

2. The provisions of . . . section 1346(b) of this title shall not apply to—

. . . . .

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); Gibson v. United States, 457 F.2d 1391, 1393 (3d Cir. 1972). Plaintiff's complaint avers that he was employed for approximately eight years, ending in December, 1969, as an agent and employee of the defendants, first as a special agent for the Federal Bureau of Drug Abuse Control and ultimately as a special agent for the Federal Bureau of Narcotics and Dangerous Drugs; that during his tenure as a federal employee, he received several grade promotions, commendations and awards for the performance of his duties in a manner which was substantially satisfactory or better; that in December, 1969, he resigned from his Federal employment, while stationed in Pittsburgh, Pennsylvania, rather than accept a transfer to Minneapolis, Minnesota; that his resignation was caused by reasons of personal illness, illness in his family, and other personal hardships which rendered impossible plaintiff's relocation to Minneapolis, Minnesota; that subsequent to terminating his employment with the Federal Bureau of Narcotics and Dangerous Drugs, he made application for new employment with numerous public and private law enforcement agencies and with educational institutions, seeking employment both in law enforcement and in law enforcement education; that he made application with Federal law enforcement agencies in Pittsburgh, Pennsylvania, and in New York City, New York, with Pennsylvania state law enforcement agencies, and with community law enforcement agencies and Western Pennsylvania universities.

In his amended complaint he specifically averred:

9(a). In each instance involving a particular prospective employer, his application for employment was refused by that prospective employer because of adverse statements and comments made to said employer by the defendants herein, and their agents and employees, to the effect that plaintiff is not a fit or competent law enforcement officer, or that plaintiff's performance with the Federal government was substandard, or that plaintiff was the subject of disciplinary action before his termination with the government agency, or that plaintiff was, in effect, discharged by the Federal agency for misconduct.

9(b). Having undertaken and accepted the status of plaintiff's employer, the defendants herein assumed the duty and obligation to plaintiff to maintain accurate records of plaintiff's performance and employment history and to maintain such information concerning plaintiff available to all government employees and other persons having a reasonable and justifiable interest therein. Defendants breached that duty and obligation to plaintiff by their negligent, wrongful, tortious conduct in failing to maintain complete, comprehensive, adequate, and accurate records of plaintiff's professional performance and employment history, of plaintiff's exceptional performance of his duties and receipt of commendations and awards in particular circumstances, and of the true circumstances of plaintiff's termination of employment with the federal agencies involved. Defendants further breached their duty and obligation to plaintiff by their failure to maintain and make available to reasonably and justifiably interested persons, including federal agents and employees, of complete and accurate information regarding plaintiff's performance and employment history.[3]

---

3. Additionally, he averred:

13. As a result of plaintiff's satisfactory employment history with the defendants, defendants owed plaintiff a duty and obligation to accurately represent plaintiff's past employment history to prospective employers, which duty and obligation was breached by the negligent, wrongful and tortious acts of the defendants described above. In the breach of that duty, the defendants failed to exercise the degree of due and reasonable care for the rights of plaintiff required under the circumstances. In the status of plaintiff's employer, de-

## I.

█ We take as our threshold inquiry whether plaintiff's averments set forth a claim upon which relief can be granted. "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed. 2d 80 (1957). And to do substantial justice, reasonable factual inferences will be drawn to aid the pleader. F.R. C.P. 8(f); 5 Wright, Federal Practice and Procedure, § 1363 at 657.

Section 1346(b) of the Federal Tort Claims Act commands that we look to "the law of the place where the [negligent or wrongful] act or omission occurred." Since the gravamen of plaintiff's complaint is the negligent maintenance of employment records, and since plaintiff averred that he was last stationed in Pittsburgh, Pennsylvania, it is reasonable to infer that his records were maintained in that state. Thus, we must decide if the state of Pennsylvania would recognize a tort of negligently maintaining employment records as distinguished from the tort of defamation.

Plaintiff argues that the law imposes a duty on an employer to use due care in maintaining an employee's work history once it has undertaken the task of such recordkeeping and that injury to the ex-employee's reputation is foreseeable when an employer disseminates such information to prospective employers. For its part, the government argues: "In the instant case, there is present no tort principle which makes an employ-er's failure to compile and maintain complete employment records actionable."

█ Because there are no precise Pennsylvania precedents, we turn again, as we did in Boase v. Lee Rubber & Tire Corporation, 437 F.2d 527, 531 (3d Cir. 1970), "to the teaching of Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967): 'federal authorities must apply what they find to be the state law. . . . In this respect, it may be said to be, in effect, sitting as a state court.'" "[I]t is incumbent on us to make our own determination of what the Pennsylvania Supreme Court would probably rule in a similar case." Gerr v. Emrick, 283 F.2d 293, 294 (3d Cir. 1960), cert. denied, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961). In doing so, we perceive our analysis to require two determinations: whether the Pennsylvania law of libel and slander would pre-empt such a claim in negligence; if not, whether that state would recognize plaintiff's averments as constituting a recognized cause of action in negligence.[4] We have concluded that there would be no pre-emption and that, under the facts as alleged, Pennsylvania courts would be hospitable to a cause of action in negligence.

### A.

█ It is essential to define and analyze the elements of the two torts as recognized by Pennsylvania, a common law state. Conduct is negligent "if the harmful consequences could reasonably have been foreseen and prevented by the exercise of reasonable care." Lerro v. Thomas Wynne, Inc., 451 Pa. 37, 301 A. 2d 705, 708 (1973). Restated, the act of

---

fendants had the duty and obligation to maintain complete, accurate and representative records of plaintiff's performance and employment history, while maintaining said complete and accurate records available to all properly interested persons, which duty and obligation defendants breached, by both acts of commission and omission, thereby failing to exercise that degree of due and reasonable care for the rights of plaintiff required under the circumstances.

4. In federal practice a complaint sets forth "a claim for relief," F.R.C.P. 8(a); under Pennsylvania practice a complaint states "a cause of action," Pa.R.Civ.Pro. 1019(a), 12 P.S.Appendix.

negligence consists of the existence of a legal duty and a breach thereof.[5] "Libel is the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred, contempt or ridicule."[6] The word "slander" is the general and original word for all kinds of defamation.[7] However, in modern usage it has been limited to defamation by words spoken rather than written, that is, to the speaking of base and defamatory words which tend to prejudice another's reputation, office, trade, business, or means of making a living.[8] Malice is essential to an action for defamation.[9]

It quickly becomes apparent that the root premises of negligence and defamation are conceptually distinct. Proceeding from this rudimentary analysis to a consideration of the two specific torts embraced by these concepts, we see differences in the causes of action as well. To state a cause of action for negligence the plaintiff must plead a legal duty, a breach of that duty, proximate or legal cause, and actual damage or injury. Boyce v. United States Steel Corporation, 446 Pa. 226, 285 A.2d 459 (1971); Whitner v. Von Hintz, 437 Pa. 448, 263 A.2d 889 (1970); Kirby v. Carlisle, 178 Pa.Super. 389, 116 A.2d 220 (1955). To state a cause of action for defamation generally the plaintiff must allege the defamatory character of the communication, publication, that the communication refers to the plaintiff, the third party's understanding of the communication's defamatory character and its reference to the plaintiff, and injury. Corabi v. Curtis Publishing Company, 441 Pa. 432, 273 A.2d 899 (1971); Cosgrove Studio and Camera Shop, Inc. v. Pane, 408 Pa. 314, 182 A.2d 751 (1962); Act of August 21, 1953, P.L. 1291, § 1, 12 Pa.Stat.Anno. § 1584a. As previously observed, malice is essential to an action for defamation in Pennsylvania; as a general rule, it is presumed or implied to exist from the unprivileged publication of defamatory words actionable per se. Corabi v. Curtis Publishing Company, *supra*, 273 A.2d at 909. It is not necessary that the defendant harbor ill will against any particular person.[10] Le-

---

5. Prosser's exposition of the traditional elements of negligence illustrates this:

 1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

 2. A failure on his part to conform to the standard required. These two elements go to make up what the courts usually have called negligence; but the term quite frequently is applied to the second alone. Prosser, Law of Torts, Hornbook Series, § 30 (footnote omitted).

 *See also*, Restatement, Torts 2d § 282:

 § 282. Negligence Defined

 In the Restatement of this Subject, negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. It does not include conduct recklessly disregardful of an interest of others.

6. Schnabel v. Meredith, 378 Pa. 609, 107 A. 2d 860, 862 (1954), citing Collins v. Dispatch Publishing Co., 152 Pa. 187, 25 A. 546 (1893).

7. Williams v. Kroger Grocery & Baking Co., 133 Pa.Super. 1, 1 A.2d 495, 498 n. 1 (1938), aff'd 337 Pa. 17, 10 A.2d 8 (1940).

8. Solosko v. Paxton, 383 Pa. 419, 119 A.2d 230, 232 (1956). *See* 2 U.Pitt.L.Rev. 1 (1935). It is not necessary that there be proof of any actual ill will against any particular person. *See infra*, p. 1274.

9. Neeb v. Hope, 111 Pa. 145, 2 A. 568 (1886); Barr v. Moore, 87 Pa. 385 (1878).

10. It has often been said that malice is one of the elements of liability, and the doctrine is commonly stated in this way: that malice must exist, but that it is presumed by law from the mere speaking of the words; that again you may rebut this presumption of malice by showing that the words were spoken under circumstances which made the communication privileged, —as, for instance, by a lawyer if the necessary course of his argument, or by a person answering in good faith to inquiries as to the character of a former servant,—and then, it is said, the plaintiff may meet this defence in some cases by showing that the words were spoken with actual malice.

gal malice alone is sufficient to support an action. Legal malice has been defined as "a *wrongful* act done intentionally, without just cause or excuse. . ." *Ibid.* Thus, it appears that Pennsylvania considers the defamation torts of libel and slander to be intentional in nature, rather than accidental or unintentional. Harper and James also list the law of defamation in "Part One: Intended Torts"; negligence is listed in "Part Two: Accidents."[11]

In addition to the differences in the ingredients of these separate torts, the Pennsylvania legislature has seen fit to codify certain aspects of the law of defamation.[12] There is no such counterpart in the general law of negligence. The legislature has prescribed a separate statute of limitations for defamation actions, which is shorter than those for injuries or property damage from acts of negligence generally.[13]

Another distinction is the requirement of proof of injuries. Pennsylvania requires proof of actual damages in order to recover in an action for negligence. Kirby v. Carlisle, *supra.* In defamation if the words in themselves are defamatory, defamatory *per se,* general damages

for loss of personal or business reputation are recoverable and no averments or proof of special damages are necessary. Cosgrove Studio and Camera Shop, Inc. v. Pane, *supra,* 182 A.2d at 753.

■ Notwithstanding these distinctions, it would seem that the interest sought to be protected in this case, whether by an action in negligence or in defamation, would appear to be the same: "the interest in reputation—the interest in acquiring, retaining, and enjoying a reputation as good as one's character and conduct warrant."[14] But this phenomenon is not unusual to the substantive law of torts.[15] For example, if one strikes another with his automobile, under certain circumstances, three separate torts could be pursued in Pennsylvania: trespass vi et armis, negligence and strict liability. Each protects the plaintiff's interest in freedom from bodily injury. In the case *sub judice* the plaintiff is merely protecting his interest in his reputation and is not restricted to the choice of one remedy. Similarly, in federal practice one civil remedy will not pre-empt another, and specifically, it has been held that one remedy will not pre-empt others under the Federal Tort Claims Act. Rogers v.

---

All this sounds as if at least actual intent to cause the damage complained of, if not malevolence, were at the bottom of this class of wrongs. Yet it is not so. For although the use of the phrase "malice" points as usual to an original moral standard, the rule that it is presumed upon proof of speaking certain words is equivalent to saying that the overt conduct of speaking those words may be actionable whether the consequence of damage to the plaintiff was intended or not. And this falls in with the general theory, because the manifest tendency of slanderous words is to harm the person of whom they are spoken.
Holmes, The Common Law, Little Brown, 110.

11. Harper and James, The Law of Torts (1956).

12. *See,* Act of April 11, 1901, P.L. 74, §§ 2, 3, 12 Pa.Stat.Anno. §§ 1582, 1583; Act of August 21, 1953, P.L. 1291, § 1, 12 Pa.Stat. Anno. § 1584a (burden of proof).

13. Act of March 27, 1713, 1 Sm.L. 76, § 1, 12 Pa.Stat.Anno. 31, provides a six-year statute of limitations for all "actions upon the case, other than for slander, and the said actions for account, . . . trespass, debt, detinue and replevin, for goods or cattle. . . ." Trespass actions for personal injuries "within two years next after the cause of such actions or suit. . . ." For defamatory torts, "the said actions upon the case for words, within one year next after the words spoken, and not after."

14. 1 Harper and James, § 5.1 at 349.

15. This phenomenon is not new to the procedural law of the federal and Pennsylvania courts. Under Pennsylvania practice "[t]he plaintiff may state in his complaint two or more causes of action in trespass. . . ." Pa.R.Civ.Pro. 1044(a), 12 P. S.Appendix. In federal court a party may state "as many separate claims . . . as he has regardless of consistency. . . ." F.R.C.P. 8(e)(2).

United States, 397 F.2d 12, 15 (4th Cir. 1968).[16]

In sum, the essence of the tort of defamation is the publication of defamatory matter. The gravamen of plaintiff's complaint, as recognized by the district court, was the "BNDD's alleged failure to maintain adequate employment records. . . ." It is not the publication of the incorrect employment history and record that serves as the foundation of plaintiff's complaint; it is the method in which the defendant maintained the record of his employment that is being criticized. Accordingly, we are persuaded that the Pennsylvania courts would not view the defamatory torts as pre-empting a cause of action sounding in negligence and based on an employer's failure to use due care in the maintenance of an employee's employment records.

### B.

This brings us to the question whether Pennsylvania would recognize plaintiff's allegations as constituting a cause of action in negligence. We first must determine whether as set forth in the Restatement, Torts 2d, "the interest invaded is protected against unintentional invasion," § 281(a), or as more familiarly stated, whether his employer owed a legal duty to the plaintiff.

Plaintiff must bring himself within the scope of a definite legal obligation, so that it might be regarded as personal to him. "Negligence in the air, so to speak, will not do."[17] Professor Leon Green reminds us: "The scope of a defendant's duty depends on how far the law's protection will be extended.
. . .

The determination of the issue of duty and whether it includes the particular risk imposed on the victim ultimately rests upon broad policies which underlie the law."[18]

Dean Erwin Griswold reminds us that Cardozo emphasized: "The judge . . . is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system. . . ."[19] Mindful of these precepts we turn to elementary principles set forth in Section 285, Restatement, Torts 2d:

The standard of conduct of a reasonable man may be

(a) established by a legislative enactment or administrative regulation which so provides, or

(b) adopted by the court from a legislative enactment or an administrative regulation
which does not so provide, or

(c) established by judicial decision, or

(d) applied to the facts of the case by the trial judge or the jury, if there is no such enactment, regulation, or decision.

First, we note that federal administrative regulations govern the es-

---

16. "We think 28 U.S.C. § 2680(h) is inapplicable. If there is a valid claim here, it is founded on negligence even though assault or false imprisonment may be collaterally invoked. See Panela v. United States, 216 F.2d 622 (2d Cir. 1964)."

17. Prosser, *supra*, § 53 at 332, quoting Pollock, Law of Torts, 13th Ed.1929, 468.
The statement that there is or not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is therefore not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no uni-versal test for it ever has been formulated.
*Ibid.* (Footnote omitted.)

18. Green, Duties, Risks, Causation Doctrines, 41 Texas L.Rev. 42, 45 (1962):
These policies may be characterized generally as morality, the economic good of the group, practical administration of the law, justice as between the parties and other considerations relative to the environment out of which the case arose.

19. Griswold, "The Judicial Process"; 31 Fed.Bar J. 309, 311 (1973), citing Cardozo, Nature of the Judicial Process, 141 (1921).

tablishment, maintenance and disclosure of personnel records of executive department employees like plaintiff. Pursuant to Executive Order 10561, September 13, 1954, the Civil Service Commission issued regulations, 5 C.F.R. § 293.201 et seq., and § 294.101 et seq., which require that "each agency [of the executive department] shall establish an Official Personnel Folder for each employee. . . ." And, to "meet the need for quick identification of the many laws, rules, regulations, and instructions pertinent to personnel administration . . ." the Civil Service Commission also designed an official publication, the Federal Personnel Manual (FPM). Basically, this comprehensive and detailed publication is the personnel "bible" of the Civil Service Commission. The manual explains that the personnel records "in the folder vitally affect the rights and benefits of individual employees as well as the interests of the Government. It is therefore important that the instructions for the maintenance and disposition of folders be carried out with the *utmost care and that all necessary precautions be taken to safeguard the folder and its contents.*" FPM 293–7, 8 (emphasis supplied). The regulations require the Official Personnel Folder to contain "reports of selection and other personnel actions . . . [as well as] permanent and temporary records affecting the em-

ployee's status and service. . . ." 5 C.F.R. § 293.204. Specific examples of the contents, "performance ratings, . . . admonishments, letters of caution, warning, reprimand, and similar disciplinary action papers," are set forth in FPM 2–7.

Moreover, 5 C.F.R. § 294.702, mandates what information may be made available to a prospective employer of a Government employee or former Government employee.[20] Definite restrictions as to dissemination of employment information are imposed. A special procedure is mandated for "Disclosure of disciplinary action information."[21] Since the regulations contemplate the dissemination of information to prospective employers and impose certain safeguards, a risk of injury to an employee's reputation is contemplated. Thus, it follows that there arises a corresponding duty to use reasonable care in maintaining the accuracy of the records. By finding that the United States does owe plaintiff a duty of reasonable care in the maintenance of his personnel folder, we do not indicate the precise bounds of the government's duty, nor intimate that the duty is breached merely by permitting inaccurate information to be filed or by failing to file pertinent information. Questions of breach of duty and causation, as well as possible defenses to the action in negligence, will be considered

---

20. (b) In addition to the information that may be made available [to the public] under paragraph (a) of this section, the following information may be made available to a prospective employer of a Government employee or former Government employee.

 . . . . .

 (1) Tenure of employment;
 (2) Civil service status;
 (3) Length of service in the agency and the Government; and
 (4) When separated, the date and reason for separation shown on the Notification of Personnel Action, Standard Form 50. This section is explained in detail in FPM 294–15.

21. f. An exact copy or an extract of the actual language of a written admonition, written reprimand, notice to suspend, or

notice to demote for cause normally should not be released to sources other than authorized Federal officials without the written consent of the person who received the disciplinary action. However, upon a determination of legitimate interest, and upon a determination that the release would not be prohibited by law, the reason shown on the Standard Form 50 (for a suspension or a demotion for cause) or a brief statement of the nature of the offense and the specific disciplinary action imposed (for an admonition or reprimand) may be furnished without the consent. of the employee. An incident which did not lead to separation should be of little interest to an activity outside the Federal service; therefore, the employee's right to privacy should be the paramount consideration.
FPM 294–16, 17.

by the district court on remand in the processing of plaintiff's claim.

 Alternatively, we have endeavored to ascertain whether a standard of conduct for the employer can be said to have been established by Pennsylvania judicial decision. While our research has uncovered no precise precedent covering the facts of this case, we know, at least, that the employer would be required to confront the doctrine that one who gratuitously assumes to render a service obligates himself to proceed with due care.[22] "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." Cardozo, J., Glanzer v. Shepard, 233 N.Y. 236, 239, 135 N.E. 275, 276 (1922). " 'When an agency of the United States voluntarily undertakes a task, it can be held to have accepted the duty of performing that task with due care.' Rogers v. United States, 397 F.2d 12, 14 (4th Cir. 1968)," Gibson v. United States, *supra,* 457 F.2d at 1394.

 Having due regard for those principles of tort law followed by the Pennsylvania Supreme Court, we are persuaded that the state courts would recognize a duty of the defendant personal to the plaintiff to use due care in keeping and maintaining employment records, and that for breach of that duty, plaintiff may have a cause of action if he is injured thereby and if the defendant's breach was the proximate cause of his injury. We do nothing more than

continue "in the tradition of spinning out applications of accepted precedents. . . . " Keeton, Judicial Law Reform —A Perspective in the Performance of Appellate Courts, 44 Texas L.Rev. 1254, 1254–1255 (1966). We find nothing in the recent history of the Pennsylvania Supreme Court to the contrary.[23] "New and nameless torts are being recognized constantly, and the progress of the common law is marked by many cases of first impression, in which the court has struck out boldly to create a new cause of action, where none had been recognized before. . . . When it becomes clear that the plaintiff's interests are entitled to legal protection against the conduct of the defendant, the mere fact that the claim is novel will not of itself operate as a bar to the remedy."[24] Although negligence law is generally associated with bodily or physical injuries, there is no conceptual impediment to the recovery for non-traumatic injury. As a leading case expresses the scope of the law's protection: "[W]e see no good reason why a wrongful invasion of a legal right, causing an injury to the body or mind . . should not give rise to a right of action. . . ."[25]

In recent years we have witnessed rapid, if not revolutionary, development in judge-made tort law by Pennsylvania courts. Some of the more dramatic changes in the law of torts made by Pennsylvania courts in recent years are set forth in the margin.[26] It will be

---

22. *Cf.,* Restatement, Torts 2d, § 323; DeJesus v. Liberty Mutual Insurance Co., 423 Pa. 198, 223 A.2d 849 (1966).

23. It is one of the many states described by Professor Robert E. Keeton which has recently participated in "candid, openly acknowledged change" in the law of torts. 44 Texas L.Rev. at 1254.

24. Prosser, *supra,* § 1 at 3, 4 (footnote omitted).

25. Johnson v. Sampson, 167 Minn. 203, 208 N.W. 814, 816 (1926).

26. Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A.2d 877 (1973) (doctrine of governmental immunity abol-

ished); Hopkins v. Blanco, 224 Pa.Super. 116, 302 A.2d 855 (1973) (allocatur granted and appeal pending in Supreme Court) (wife entitled to recover for loss of consortium); Gray v. Grunnagle, 423 Pa. 144, 223 A.2d 663 (1966) (doctrine of informed consent adopted in malpractice cases); Elderkin v. Gaster, 447 Pa. 118, 288 A.2d 771 (1972) (sale of new home by builder is accompanied by implied warranty); Falco v. Pados, 444 Pa. 372, 282 A.2d 351 (1971) (doctrine of parental immunity abolished); Hoffman v. Misericordia Hospital of Philadelphia, 439 Pa. 501, 267 A.2d 867 (1970) (implied warranty of fitness accompanies blood transfusion even though no sale involved); Papieves v. Lawrence, 437 Pa. 373, 263 A.2d

noted that in each of these developments the Pennsylvania court was expanding and not contracting liability of defendants and increasing recoveries for plaintiffs. Thus there is nothing in principle, nor precedent, nor manifest in the contemporary jurisprudential philosophy of Pennsylvania courts which would tend to foreclose plaintiff's course of action in this case.

## II.

■■■ Concluding that plaintiff has set forth a claim for relief recognizable by Pennsylvania courts does not end our inquiry, for we must also determine whether, as a matter of federal law, such a claim is one "arising out of . . . libel [or] slander . . ." within the meaning of § 2680(h). If it does arise out of libel and slander, then the claim is simply not one for which relief may be had against the Government under the Federal Tort Claims Act. Our analysis of this question of interpretation is not without its precedential guideposts.

When Congress passed the Federal Tort Claims Act it used neither intricate nor restrictive language in waiving the Government's sovereign immunity. United States v. Muniz, 374 U.S. 150, 152, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). At the same time, Congress qualified this broad waiver of immunity in 28 U. S.C. § 2680, "for certain specified torts of federal employees." Dalehite v. United States, 346 U.S. 15, 17, 73 S.Ct. 956, 958, 97 L.Ed. 1427 (1953). The reason for Congressional passage of the Act has been succinctly stated:

It was the offspring of a feeling that the Government should assume the obligation to pay damages for the misfeasance of employees in carrying out its work. And the private bill device was notoriously clumsy. Some simplified recovery procedure for the mass of claims was imperative.

*Ibid.,* 346 U.S. at 24–25, 73 S.Ct. at 962.

Mindful that the Act must be interpreted in such a way that its legislative purposes are carried out, that we must look beyond the literal meaning of the language of the complaint, and that we must avoid drawing "distinctions so finespun and capricious as to be almost incapable of being held in the mind for adequate formulation," Indian Towing Co. v. United States, 350 U.S. 61, 68, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955), we are also acutely aware that "the Government's liability is no longer restricted to circumstances in which government bodies have traditionally been responsible for misconduct of their employees. The Act extends to novel and unprecedented forms of liability as well." United States v. Muniz, *supra,* 374 U.S. at 159, 83 S.Ct. at 1856; United States v. Neustadt, 366 U.S. 696, 703, 708, 81 S.Ct. 1294, 6 L.Ed.2d 614; Dalehite v. United States, *supra,* 346 U.S. at 31, 73 S.Ct. 956, 97 L.Ed. 1427.

■■■ These governing principles persuade us that Congress has relinquished its sovereign immunity under the factual complex of this case. Basically, the Government's argument before us parallels its contention in the district court: the essence of plaintiff's complaint is defamation; therefore, such action is

118 (1970) (new action for mishandling of dead body recognized); Niederman v. Brodsky, 436 Pa. 401, 261 A.2d 84 (1970) (impact rule abolished); Kassab v. Central Soya, 432 Pa. 217, 246 A.2d 848 (1968) (requirement of privity in breach of warranty actions abolished); Reitmeyer v. Sprecher, 431 Pa. 284, 243 A.2d 395 (1968) (responsibility of landlord recognized for injuries to tenant resulting from certain defects in the premises); Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966) (strict liability of vendor of defective product recognized); Flagiello v. Pennsylvania Hospital, 417 Pa. 486, 208 A.

2d 193 (1965) (doctrine of charitable immunity abolished); Griffith v. United Airlines, Inc., 416 Pa. 1, 203 A.2d 796 (1964) (contact theory of conflict of laws adopted); Sinkler v. Kneale, 401 Pa. 267, 164 A.2d 93 (1960) (right of child to recover for prepartum injuries recognized); Karchner v. Mumie, 398 Pa. 13, 156 A.2d 537 (1959) (right of married woman to sue for criminal conversation recognized); Acquino v. Bulletin Company, 190 Pa.Super. 528, 154 A.2d 422 (1959) (allocatur denied) (right of action for invasion of privacy recognized).

barred by the express language of § 2680(h). It seeks to distinguish Gibson v. United States, *supra,* and places reliance on our earlier cases of Cenna v. United States, 402 F.2d 168 (3d Cir. 1968), and Dupree v. United States, 264 F.2d 140 (3d Cir. 1959), cert. denied, 361 U.S. 823, 80 S.Ct. 69, 4 L.Ed.2d 67 (1959).

In *Gibson* we emphasized that "Section 2680(h) addresses itself primarily to intentional torts for which Congress was unwilling to assume liability." 457 F.2d at 1395. We were careful to limit our statement with "primarily," for it has been held that "misrepresentation, deceit" as embodied in the exclusionary statute, § 2680(h), embraces negligent as well as intentional misrepresentation; United States v. Neustadt, *supra,* 366 U.S. at 702, 81 S.Ct. 1294, 6 L.Ed.2d 614; Cenna v. United States, *supra,* 402 F.2d at 171. *Neustadt* recognized that in using both the terms "misrepresentation" and "deceit," Congress recognized the basic distinctions between the two torts. Because misrepresentation may have a conceptual basis in negligence, the Court reasoned that " 'deceit' alone would have been sufficient had Congress intended only to except deliberately false representations." 366 U.S. at 707, 81 S.Ct. at 1301 (footnote omitted).

As the tort of misrepresentation differs conceptually from the tort of deceit, the tort of negligently maintaining the personnel records of an employee differs from the defamatory torts of libel and slander. But here the resemblance between this case and the cases of *Neustadt, Cenna* and *Dupree* comes to an end. Here only "libel, slander" are specifically excluded; generic negligent claims are not. In *Neustadt* and *Cenna* there was a specific statutory exclusion of "misrepresentation"; here there is no express exclusion of the remedy pursued. In *Dupree* there was a specific statutory exclusion of "interference with contract rights"; again, here there is no express

exclusion of the remedy pursued. To hold that a claim for negligent maintenance of employee records is excluded by the statutory language "libel, slander" would be to read into the Act an exclusion that does not exist by language or by implication. Moreover, to so interpret the statute would require an assumption that Congress was unaware of established tort definitions.[27] This we simply cannot and will not do. We hearken to the teachings of Chief Justice Warren in United States v. Muniz:

> The Federal Tort Claims Act provides much-needed relief to those suffering injury from the negligence of government employees. We should not, at the same time that state courts are striving to mitigate the hardships caused by sovereign immunity, narrow the remedies provided by Congress. As we said in Rayonier, Inc. v. United States, . . . [352 U.S. 315 (1957)] at 320, 77 S.Ct. 374, 1 L.Ed.2d 354, "There is no justification for this Court to read exemptions into the Act beyond those provided by Congress. If the Act is to be altered that is a function for the same body that adopted it."[28]

In excluding certain tort causes of action from the Federal Tort Claims Act, Congress focused its attention upon the type of governmental activity that might cause harm, not upon the type of harm caused. In excluding actions in libel and slander, Congress, in our view, was not concerned with the difficulties involved in proof of injury to reputation, as the government here urges. Rather the concern was that government officials should not be hampered in their writing and speaking by the possibility that their actions would give rise to government liability.

The plaintiff alleges that two distinct duties were breached by the defendant: (1) the duty to maintain complete and accurate records of plaintiff's employment history, and (2) the duty to accu-

---

27. "[T]here is no warrant for assuming that Congress was unaware of established tort definitions when it enacted the Tort Claims Act. . . ." United States v. Neus-

tadt, *supra,* 366 U.S. at 707, 81 S.Ct. at 1301.

28. 374 U.S. at 165–166, 83 S.Ct. at 1859.

rately represent plaintiff's past employment history to prospective employers. The district court, considering these contentions together, held that they amounted to a complaint for damage from publication of false information, and that such a complaint was, in essence, one of libel or slander, which causes of action cannot be brought under the Federal Tort Claims Act.

All that we decide here is that the first duty exists and that it can be enforced through an action based on a general negligence theory. Plaintiff's complaint states a claim here not only because negligence is conceptually distinct from defamation, but also because the negligence alleged here was distinct from the mere writing or speaking for which Congress did not provide liability. To the extent the complaint before us is based on allegations respecting this second alleged duty, i. e., the duty on the part of the government to disseminate accurate information, such a claim is barred by the libel and slander exception to the Federal Tort Claims Act, as conceded by appellant at oral argument.

The judgment of the district court will be reversed.