James A. **SCHLESNER**, Plaintiff,

v.

**UNITED STATES of America, Social Security Administration, Its Agents and Employees, Defendants.**

**No. 02–C–0685.**

United States District Court, E.D. Wisconsin.

Feb. 19, 2003.

Steven C. Harvey, for Plaintiff.

Susan M. Knepel, for Defendants.

### DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS COMPLAINT

CALLAHAN, United States Magistrate Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action was commenced on July 11, 2002, when the plaintiff, James A. Schlesner ("Schlesner"), filed a complaint naming the United States of America ("United States"), the Social Security Administration (the "SSA"), its agents and employees as defendants.[1] Distilled to its essence, Schlesner's complaint alleges that he had been ordered by a Wisconsin state court to pay child support in the amount of $49.75 per week. (Compl.¶ 3). Pursuant to a state court order, the SSA began in approximately July, 1998, to withhold $214.00 per month from the plaintiff's social security benefits and pay it to the Wisconsin Support Collection Trust Fund (the "WSCTF"). (Compl.¶ 5.) More precisely, the SSA paid $215.00 to the WSCTF on or about August 10, 1998. (Compl.¶ 6.) The SSA continued to withhold $214.00 per month from the plaintiff's social security benefits over the course of the next four months, but failed to pay such money to the WSCTF. (Compl.¶ 6.) Indeed, it was not until on or about January 10, 1999, that the SSA finally made a payment to the WSCTF in the amount of $856.00. (Compl.¶ 6.)

The SSA's failure to make monthly payments to the WSCTF had serious consequences for the plaintiff. On October 19, 1998, a contempt hearing was held in a Wisconsin state court because of the plaintiff's failure to make the required child support payments. (Compl.¶ 7.) The plaintiff was found in contempt, and a sentence of six months in jail was imposed. (Compl.¶ 7.) However, the plaintiff was given until November 19, 1998, to purge the contempt by paying the accrued child support arrearage in full. (Compl. ¶ 7.)

---

1. It is not entirely clear whether the plaintiff has named multiple defendants or has named either the United States of America or, instead, the Social Security Administration as the only defendant. The caption of his complaint refers to the "defendant" (singular). However, the body of his complaint is inconsistent in the manner which he refers to the entity or entities he intended to sue. For example, in paragraph 25 of the complaint he alleges that the "defendants" (plural) breached a particular duty. Yet, in paragraph 26 he claims that he was "harmed as a direct and proximate result of Defendant's breach of its duty" (singular). This same inconsistency is found in paragraphs 29, 30, 31, 33, and 36.

For purposes of this decision, the court will assume he has named the United States of America *and* the Social Security Administration as the defendants.

Unknown to the plaintiff, the SSA was withholding the child support payments but was not forwarding them to the WSCTF. (Compl.¶ 8.) Thus, because the plaintiff's remaining income was insufficient to cover living expenses and the arrearage, and because he was unable to purge himself of the earlier contempt finding, he was committed to jail on November 18, 1998. (Compl.¶¶ 9, 10.)

While he was serving his jail term, the plaintiff learned that the SSA had not been paying to the WSCTF the $214.00 it had been withholding from his benefits. (Compl.¶ 11.) The plaintiff gained his release from jail on December 15, 1998, by paying over his December 1998 social security disability check in the amount of $309.00. (Compl.¶ 12.) Thereafter, on January 18, 1999, the WSCTF received $856.00 from the SSA. (Compl.¶ 14.) This represented the four months of $214.00 monthly child support payments which the SSA had withheld from the plaintiff's benefits from mid-August through December, 1998. (Compl.¶ 14.)

Unfortunately, the plaintiff's problems were not yet entirely behind him. This is because on February 15, 1999, the WSCTF received another $214.00 payment from the SSA, but the SSA failed to pay to the WSCTF the withheld child support payments for the months of March and April, 1999. (Compl.¶ 15.) As a result of the WSCTF's not receiving such child support payments, the plaintiff was arrested and again jailed from April 23 through April 27, 1999. (Compl.¶¶ 16–17.) On that latter date, the plaintiff provided to the sentencing judge a copy of correspondence he had previously received from a representative of the SSA in which the SSA acknowledged that the failure to make the required payments had been the fault of the SSA. (Compl.¶ 17.)

Furthermore, as a result of the plaintiff's incarceration, he had placement of his three children from a separate marriage and divorce taken away from him, and thereby lost the right to receive child support in the amount of $75.00 per week, effective in or about December, 1998. (Compl.¶ 18.) Although he finally regained placement of his three children in August, 2000, such placement was reduced to a fifty-fifty split. (Compl.¶ 19.) As a consequence of the fifty-fifty placement, the plaintiff no longer receives child support payments. (Compl.¶ 20.) Indeed, as a result of such fifty-fifty placement, he has not received child support payments since December, 1998. (Compl.¶ 20.)

The plaintiff seeks damages from the defendants for all of the foregoing. More precisely, he asserts claims for negligence against the defendants under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and 2671–2680, and for violation of his rights under the full faith and credit, due process, and equal protection clauses of the United States Constitution.

The plaintiff's complaint was met with a motion to dismiss. More precisely, the defendants have filed a motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion has now been fully briefed and is ready for resolution. For the reasons which follow, the defendants' motion to dismiss will be granted.

## II.  DISCUSSION

### A.  Legal Standards

Federal Rule of Civil Procedure 12(b) provides, in pertinent part, as follows: "Every defense, in law or in fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following

defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, ... (6) failure to state a claim upon which relief can be granted."

Federal Rule of Civil Procedure 12(b)(1) permits the court to dismiss an action for lack of subject matter jurisdiction. Once the existence of subject matter jurisdiction is questioned, it is the plaintiff's burden to establish that all jurisdictional requirements have been met. *See Kontos v. U.S. Dep't of Labor,* 826 F.2d 573, 576 (7th Cir.1987). However, "[w]hen ruling on a motion to dismiss for lack of subject matter jurisdiction, the ... court must accept all of the complaint's well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in [the] plaintiff's favor." *Waldron v. Pierre,* 995 F.Supp. 935, 936 (N.D.Ill.1998). Additionally, "it is proper for the court to look beyond the jurisdictional allegations in the complaint and to view whatever evidence has been submitted in response to the motion," including affidavits and testimony in order to resolve any factual dispute regarding the court's jurisdiction. *Sprague v. King,* 825 F.Supp. 1324, 1329 (N.D.Ill.1993); *see also Kontos,* 826 F.2d at 576.

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to decide whether the plaintiff's pleadings actually state a claim upon which relief can be granted. For the purposes of a motion to dismiss, all factual allegations of the complaint are taken as true. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *see also Eison v. McCoy,* 146 F.3d 468, 470 (7th Cir.1998). Such allegations must be viewed liberally and in the light most favorable to the plaintiff. *Harrell v. Cook,* 169 F.3d 428, 431 (7th Cir.1999).

" '[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.,* 179 F.3d 523, 526 (7th Cir.1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). However, the court is not required to ignore any facts alleged in the complaint that undermine the plaintiff's claim or to assign weight to unsupported conclusions of law. *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988).

### B. Analysis

As stated previously, the plaintiff asserts claims for relief based upon two theories of liability. First, he claims that he was damaged by virtue of the defendants' negligence in "failing to properly pay withheld funds from [p]laintiff's social security benefits, to the WSCTF, on a monthly basis." (Compl.¶ 25.) Second, he claims that the defendants' "actions constitute violations of the full faith and credit clause, Art. IV, sec. 1, and the Due Process clauses and the Equal Protection clauses, as stated in the Fifth and Fourteenth Amendments, United States Constitution, from September, 1998 to January, 1999." (Compl.¶ 33.)

### 1. The Negligence Claim

██ "No legal proceedings, including garnishment, may be brought against the United States absent a waiver of its sovereign immunity." *Millard v. United States,* 916 F.2d 1, 3 (Fed.Cir.1990). The United States has, however, waived its sovereign immunity from proceedings in the nature of garnishment for enforcement of child support and alimony. *Id.* Congress did so with the passage of 42 U.S.C. § 659, which provides, in pertinent part:

Notwithstanding any other provision of law ... effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States ... (including any agency, subdivision, or instrumentality thereof) to any individual ... shall be subject, in like manner and to the same extent as if the United States ... were a private person, to withholding ... and to any other legal process brought ... to enforce the legal obligation of the individual to provide child support or alimony.

42 U.S.C. § 659(a).

Title 42 U.S.C. § 659(h) more specifically defines moneys payable to an individual which are considered to be based upon remuneration for employment, stating, in relevant part, that those moneys:

(A) consist of—

(i) compensation payable for personal services of the individual, whether the compensation is denominated as wages, salary, commission, bonus, pay, allowances, or otherwise (including severance pay, sick pay, and incentive pay);

(ii) periodic benefits (including a periodic benefit as defined in section 228(h)(3) ... [of this chapter] or other payments—

(I) under the insurance system established by title II ... [of this chapter];

(II) under any other system ·or fund established by the United States which provides for the payment of pensions, retirement or retired pay, annuities, dependents' or survivors' benefits, or similar amounts payable on account of personal services performed by the individual or any other individual; ...

"Title II of the Social Security Act, 42 U.S.C. §§ 401–433, entitled 'Federal Old-Age, Survivors, and Disability Insurance Benefits,' provides for disability payments to insured workers. Pursuant to 42 U.S.C. § 407 ... disability benefits made pursuant to Title II of the Social Security Act ordinarily would not be subject to garnishment. However, pursuant to 42 U.S.C. § 659(a) those benefits are subject to garnishment for child support and alimony." See DeTienne v. DeTienne, 815 F.Supp. 394, 396 (D.Kan.1993).

The plaintiff in the instant action does not dispute that disability benefits to which he may have been entitled under the Social Security Act could be garnished. To the contrary, he acknowledges that they could be garnished and that they were indeed properly garnished. His complaint is that, once they were garnished, the Social Security Administration had a duty to forward the garnished funds to the WSCTF. Because it negligently failed to discharge that duty, he argues that he was wrongly found in contempt of court and wrongly jailed.

The Federal Tort Claims Act ("FTCA") provides, in pertinent part:

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

The FTCA further provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under

like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.[2]

The first question that must therefore be addressed is whether under Wisconsin state law the United States, if it were a private person or entity, would be liable to the plaintiff for having negligently failed to forward the withheld amounts to the WSCTF. *See* 28 U.S.C. § 1346(b); *Midwest Knitting Mills, Inc. v. United States,* 950 F.2d 1295, 1297 (7th Cir.1991) ("Because the FTCA incorporates the substantive law of the state where the tortious act or omission occurred, a plaintiff must state a claim that is actionable under the substantive law in the state where the act or omission occurred."); *see also* 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3658 at 573 (3d ed. 1998) ("[T]he statutory language permitting suit to be brought if a private person would be liable to the claimant under the same circumstances requires recourse to the applicable state law to determine whether there is a parallel liability under private law; it is well-settled by the case law that if no parallel liability exists under the applicable state law, a Tort Claims Act action against the United States must be dismissed.").

The plaintiff argues that "[t]he acts alleged herein constitute negligence. Clearly, negligence is a cause of action recognized in Wisconsin." (Pl.'s Br. at 2.) The plaintiff seems to contend that because one can sue for negligence in Wisconsin, the United States can be held liable for its negligent conduct regardless of whether the United States was obligated to use due care in handling the plaintiff's garnished

benefits or whether the United States can be held accountable to the plaintiff under any Wisconsin statutes.

To be sure, Wisconsin does recognize common law negligence. Indeed, Wisconsin cases routinely define common law negligence as being comprised of the following four elements: "(1) [a] duty of care on the part of the defendant; (2) a breach of the duty of care; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Miller v. Wal–Mart Stores, Inc.,* 219 Wis.2d 250, 580 N.W.2d 233, 238 (Wis. 1998). However, it is not enough to say that because Wisconsin recognizes a claim for negligence, a claim for negligence can be successfully presented in this case. Rather, in order to pursue a claim for negligence, the plaintiff must be able to establish each element of negligence, including a duty of care to him as debtor.

Historically, Wisconsin courts treated the existence of a duty of care as a threshold question of law and defined such duty in terms of forseeability. *See id.* But, more recently, the question of a defendant's duty of care has been analyzed under substantive law as well as within a public policy framework. *Alvarado v. Sersch,* 257 Wis.2d 752, 652 N.W.2d 109, 114–16 (2002) (citing *Stehlik v. Rhoads,* 253 Wis.2d 477, 645 N.W.2d 889 (2002) and *Gritzner v. Michael R.,* 235 Wis.2d 781, 611 N.W.2d 906 (2000)); *Lemke–Wojnicki v. Kolodziaj,* 655 N.W.2d 212, 215 (2002). Therefore, the court will first turn to the substantive law to determine if a private-party garnishee owes a duty of care to a

---

**2.** To the extent the plaintiff attempts to assert a claim against the Social Security Administration under the FTCA, such claim must be dismissed for the simple reason that the SSA cannot be sued under the FTCA. Title 28 U.S.C. § 2679(a) expressly states that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive."

**1042**

debtor to pay out withheld monies in a timely fashion.

### a. The substantive law

The plaintiff cites to a number of Wisconsin Statutes in an attempt to support his contentions that a cause of action exists against the United States for negligent failure to pay out garnished monies in a timely manner. To be sure, there is a provision in the Wisconsin statutes addressing garnishee liability. Wis. Stat. § 812.41(1) provides:

If the garnishee fails to pay over funds to which the creditor is entitled under this subchapter within the time required under s. 812.39, the creditor may, upon notice to all of the parties, move the court for judgment against the garnishee in the amount of the unsatisfied judgment plus interest and costs.

This statutory section clearly gives certain rights to the creditor. It does not, however, grant any rights to the debtor.

Sections 812.41(2) and (3) of the Wisconsin Statutes speak to the rights of the debtor. Those sections read as follows:

(2) The debtor may move the court for judgment against the garnishee for the debtor's actual damages if the garnishee deducts more from the debtor's earnings than is authorized by this subchapter.
(3) In any proceeding under sub. (2), the garnishee may assert the affirmative defense that the wrongful conduct of the garnishee was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid that error. If the garnishee proves that defense, liability of the garnishee is limited to the return to the debtor of any exempt disposable earnings paid to the creditor.

Wis. Stat. §§ 812.41(2) & (3).

Obviously, these sections do not set forth any rights that the debtor might have against the garnishee arising from the garnishee's failure to pay to the creditor that amount which has been withheld from the debtor's earnings. They only speak to the debtor's right to recover damages arising from the garnishee's withholding more than allowed under the law. And that is not the scenario presented by the plaintiff in this action.

The plaintiff argues, however, that a claim does exist in Wisconsin under which a debtor can proceed against a garnishee for failing to pay withheld money to a creditor. For that proposition he cites Wis. Stat. § 767.265(6)(a). That subsection, which is found in the section of the statutes dealing with withholding for, inter alia, child support, reads as follows:

(6)(a) Except as provided in sub. (3m), if after receipt of notice of assignment the person from whom the payer receives money fails to withhold the money or send the money to the department [of workforce development] or its designee or the appropriate health care insurer, provider or plan as provided in this section or s. 767.23(1)(L) or 767.25(4m)(c), the person may be proceeded against under the principal action under ch. 785 for contempt of court or may be proceeded against under ch. 778 and be required to forfeit not less than $50 nor more than an amount, if the amount exceeds $50, that is equal to 1% of the amount not withheld or sent.

Wis. Stat. § 767.265(6)(a).

Even assuming that this statute gives a debtor standing to seek the relief called for in the statute, i.e., a contempt citation or a forfeiture of a defined amount, the statute does not give a debtor the right to seek an award of damages from the garnishee for the garnishee's negligent failure to send withheld money to the department of workforce development. Thus, this

statute cannot be relied upon by the plaintiff in the instant case to satisfy the provisions of 28 U.S.C. §§ 1346(b) and 2674.

The plaintiff also cites *Quinones v. United States,* 492 F.2d 1269 (3rd Cir.1974) in support of his arguments. *Quinones* involved a claim under the FTCA for the government's alleged failure to use due care in maintaining the plaintiff's personnel records. 492 F.2d at 1271. In finding that there was a duty to use due care in keeping and maintaining personnel records, the court relied on several federal administrative regulations governing the establishment, maintenance, and disclosure of personnel records for executive department employees like the plaintiff and looked to Pennsylvania tort law principles establishing that "one who gratuitously assumes to render a service obligates himself to proceed with due care." *Id.* at 1276–78. *Quinones,* however, is distinguishable from the instant case. To begin, "[i]n *Quinones,* the Third Circuit applied Pennsylvania law. We, on the other hand, must apply Wisconsin law." *Misany v. United States,* 873 F.2d 160, 163 n. 2 (7th Cir. 1989). And, notably, unlike in *Quionones,* no federal administrative regulations lend support to the existence of a duty of care on the part of a private-party garnishee to a debtor whose wages (here, benefits) are garnished. Nor, as previously discussed, do any Wisconsin Statutes establish that such a duty exists.

Beyond the above-discussed statutes relating to garnishment and the duties set forth therein, the plaintiff has not identified any authority suggesting that a private-party garnishee owes a duty of care to a debtor to timely pay out withheld monies to the creditor. Nor has the court's research uncovered any case law establishing such a duty. Therefore, the court turns to public policy.

### b. Public policy

The factors to be considered in a public policy analysis about the existence of a duty of care are the same as those used to excuse defendants from liability despite their negligence. *Lemke–Wojnicki,* 655 N.W.2d at 215. Those factors comprise whether:

> (1) the injury is too remote from the negligence; (2) the injury is wholly out of proportion to the tortfeasor's culpability; (3) in retrospect, it appears too highly extraordinary that the negligence should have resulted in the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; and (6) allowing recovery would enter a field that has no sensible or just stopping point.

*Id.* (citing *Alvarado,* 652 N.W.2d at 116); *see also Hartridge v. State Farm Mut. Auto. Ins. Co.,* 86 Wis.2d 1, 271 N.W.2d 598, 603 (1978); *Coffey v. City of Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132, 140 (1976). "The first and third public policy considerations reflect the traditional foreseeability analysis. Foreseeability is part of the equation used to determine a defendant's duty, along with the other public policy considerations and substantive arguments." *Id.* (citations omitted).

The plaintiff in the instant case contends that he suffered harm as a result of his being found in contempt and jailed on two separate occasions for failure to pay child support as ordered. The plaintiff argues that he suffered additional injury when he temporarily lost custody of his three children from a separate marriage and divorce and, thereafter, was obligated to accept a less favorable custody arrangement, resulting in his losing the right to receive child support.

To begin, the harm to the plaintiff in this case is wholly out of proportion to the negligence of the United States, if any, in failing to pay over the plaintiff's garnished benefits to the WSCTF in a timely fashion. Additionally, in retrospect, it appears too highly extraordinary that untimely payment of the plaintiff's properly garnished benefits would have brought about the extensive harm alleged by the plaintiff. The United States could not have predicted the scope and degree of the plaintiff's injuries resulting from its late payment of the garnished sums. Indeed, if the plaintiff had contacted the Social Security Administration to inquire about the status of the monies withheld from his social security benefit checks following the October 19, 1998 contempt hearing for his failure to pay child support, the harm to the plaintiff likely would have been minimal as he was given until November 19, 1998, to pay the accrued child support arrearage in full and expunge the finding of contempt.

■ Therefore, because the plaintiff has failed to establish a duty of care on the part of a private-party garnishee to a debtor for which the garnishee can be held liable for negligent discharge of that duty and because the court does not believe that the Wisconsin courts would recognize such a duty, the plaintiff's claim against the United States under the FTCA must be dismissed for failure to state a claim upon which relief can be granted.

### 2. The Constitutional Claim

■ Under the doctrine of sovereign immunity, the United States cannot be sued without its consent. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). And, although the United States has consented to be sued under the Federal Tort Claims Act for certain torts committed by its employees, such consent does not include constitution-al torts. Title 28 U.S.C. § 2679(b)(2)(A) expressly provides that the FTCA "does not extend or apply to a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States." *See also* 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3658.2 at 701–702 (3d ed. 1998) ("[T]he Act does not subject the United States to liability for constitutional tort claims.").

Thus, the only basis upon which the plaintiff's constitutional tort claim could arguably proceed is by virtue of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). But even here his claim runs into an insurmountable obstacle.

■ A *Bivens* action may only be maintained against a federal official in his or her individual capacity; it cannot be maintained against the United States or a federal agency. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 484–86, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *see also Cross v. Fiscus,* 830 F.2d 755, 756 (7th Cir.1987) (finding that *Bivens* only authorizes suits against federal officials in their individual capacities); *Robinson v. Turner,* 15 F.3d 82, 84 (7th Cir.1994) ("A plaintiff bringing a *Bivens* action sues a federal employee in his or her individual capacity, rather than the governmental agency or entity employing the individual."). Thus, to the extent the plaintiff is asserting a constitutional tort against the United States or the SSA, his claim must be dismissed.

Because he has not named any individuals as defendants, this should end the analysis of the plaintiff's constitutional tort claim. However, one final observation should be made. Even assuming that the plaintiff had named one or more federal officials in their individual capacities as defendants, his constitutional tort claim

would nevertheless still fall short of stating a claim upon which relief could be granted. This is because constitutional torts are predicated on intentional conduct, not on mere negligence. *See, e.g., Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). And the plaintiff's complaint alleges only that he sustained damages by virtue of negligent conduct.

## III. CONCLUSION

This court is not insensitive to the plaintiff's most unfortunate plight in this case. And it takes no pleasure in ruling that he has no remedy available to him in the federal courts. Nevertheless, that he has no such available remedy is the inescapable conclusion that the court must reach based on the foregoing analysis. *Cf. Misany v. United States,* 873 F.2d 160, 164 (7th Cir.1989) ("We regret that we cannot afford [the plaintiff] any relief from circumstances for which he was not responsible.").

In conclusion, and for all of the foregoing reasons, the plaintiff's complaint fails to set forth any claim upon which relief can be granted against the named defendants. Thus, his complaint and this action will be dismissed.

**NOW THEREFORE IT IS OR-DERED** that the defendants' motion to dismiss be and hereby is **GRANTED;**

**IT IS FURTHER ORDERED** that the plaintiff's complaint and this action be and hereby are **DISMISSED.**