Timothy W. STEFFEN, Plaintiff-Respondent,

v.

Vernon LUECHT, Defendant-Appellant.

PARTNERS MUTUAL INSURANCE COMPANY, Third-Party
Defendant-Respondent.

Court of Appeals

*No. 99–0100. Submitted on briefs October 22, 1999.—Decided
January 12, 2000.*

## 2000 WI App 56

(Also reported in 608 N.W.2d 713.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Paul M. Erspamer,* of *Jastroch & LaBarge, S.C.* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas N. Klug* and *Patrick S. Nolan,* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1.   NETTESHEIM, J.   This case started out as a $75 small claims dispute between a landlord and tenant that later mushroomed into a large claims action for wrongful death and wrongful eviction. Vernon Luecht, the tenant, appeals from a summary judgment that dismissed his counterclaim against

Timothy W. Steffen, the landlord. Luecht's counterclaim alleged that Steffen had wrongfully evicted Luecht and his wife, Judith, from their rental premises and that the wrongful eviction had caused Judith's death. The trial court dismissed the wrongful eviction action, ruling that Steffen was entitled to bring his eviction action against the Luechts. The court also dismissed Vernon's wrongful death action on public policy grounds.

¶ 2. On appeal, we reject Steffen's threshold claim that principles of claim preclusion barred Luecht's counterclaim. On the merits, we hold that material issues of fact exist on Luecht's wrongful eviction action. We reverse that portion of the summary judgment and remand for further proceedings. However, we agree with the trial court that Luecht's wrongful death action is barred on public policy grounds.

## FACTS AND PROCEDURAL HISTORY

¶ 3. The facts and procedural history of this case are somewhat involved. During 1996, the Luechts were tenants in an apartment building in the city of Waukesha owned by William and Rhonda Hansen. Although the record is unclear, it appears that the Luechts occupied the premises under an oral lease with the Hansens. Sometime prior to August 31, 1996, Steffen agreed to purchase the building from the Hansens. However, Steffen wanted the existing tenants to enter into written leases with the Hansens prior to the sale. To that end, the Luechts and the Hansens entered into a written lease on August 31, 1996. The lease was for a term of one year and called for monthly rental payments in the amount of $750. The rent was due on the first day of each month.

¶ 4. On October 28, 1996, Vernon Luecht received a telephone call from the Hansens reporting that the apartment building had been sold. Vernon was told to hold his November rental payment until the new owner contacted him. On November 6, the Hansens sent a letter to all the tenants of the apartment building advising that Steffen was the new owner and that Steffen would be contacting the tenants with instructions on "where to send the rent and who to call regarding problems or concerns."

¶ 5. On November 12, the kitchen sink in the Luechts' apartment backed up with "black, smelly water." Because they had not yet heard from Steffen, the Luechts called a plumber, who unclogged a pipe approximately thirty-two feet into the common part of the building's plumbing system. The plumber billed the Luechts $75 and the Luechts paid the bill.

¶ 6. On November 11, 1996, Steffen wrote a letter to the Luechts instructing where the rental payments should be sent and advising that Steffen was the contact person for "any concerns and/or questions." The summary judgment record indicates that the Luechts received this letter on November 14, 15 or 16. On November 18, 1996, Steffen contacted the Luechts by telephone. Both parties agree that the call was a follow-up to Steffen's letter of November 11. Steffen asked if the Luechts had mailed their rental payment. Vernon advised Steffen of the plumbing problem and the $75 charge and that he wished that Steffen would pay for the charge. Although the parties differ in their recollections regarding the specifics of this discussion, they agree that Steffen was unhappy that he had not been contacted regarding the plumbing problem and that he would not allow the Luechts to deduct the $75 from their November rental payment. Vernon stood by

his position that Steffen was responsible for the charge and he told Steffen that the rental payment, less the plumbing charge, would be paid by the end of the week.

¶ 7.   The next day, November 19, 1996, Steffen again telephoned the Luechts, inquiring about some keys that some other occupants had left with the Luechts. Vernon was not present, and Steffen talked to Judith during this call. Steffen said that he would come by the next day to pick up the keys and the November rent. When Judith reported this to Vernon, he explained to her that he had talked to Steffen the day before and had told him that the check was in the mail. Actually, the check was mailed the next day, November 20. The Luechts deducted the $75 plumbing bill from the rent, resulting in a check in the amount of $675. The Luechts then left town for a few days to attend a family funeral.

¶ 8.   When Steffen showed up on November 20 to pick up the keys and the rent payment, the Luechts were not at home. That same day, Steffen sent the Luechts a certified letter.[1] In this letter, Steffen recounted his efforts to pick up the keys and the rent payment. Because he had not yet received the rent payment, Steffen also advised that he was adding a $25 late fee and he set a deadline of November 23 for payment of the total amount due.

¶ 9.   On November 23, 1996, Steffen received the Luechts' check. He called the Luechts and discussed with Vernon the fact that the payment was not in the full amount. The parties were unable to resolve their

---

[1] It is unclear when the Luechts actually received this letter. The envelope bears notations that read, "First Notice, 11/22," "Second Notice, 11/27" and "Return, 12/7." However, the record also shows a mail receipt signed by Judith bearing the date of November 23.

disagreement and, as a result, Steffen served the Luechts with a five-day Notice To Quit Or Pay Rent on that date.

¶ 10. Vernon and Steffen again discussed the matter in a telephone call in early December. The parties' versions of this conversation differ. Vernon contends that Steffen wanted him to pay the plumbing bill and that he refused. Steffen contends that he offered to reimburse the Luechts for the plumbing bill by a separate check if the Luechts would pay the rent in the full amount. Regardless, the parties were again unable to resolve the matter. Vernon told Steffen that he and Judith would be out of the apartment by December 15.

¶ 11. On December 12, 1996, Steffen served the Luechts with a small claims action seeking eviction and rent in the amount of $1540 plus additional damages "to be determined." The pleadings required a mandatory appearance on December 30, 1996, as to the eviction claim.

¶ 12. The Luechts vacated the apartment on December 15. Judith died of a heart attack on December 23.

¶ 13. The appellate record shows a letter from Vernon to the small claims court dated December 26, 1996, seeking an adjournment of the case because of Judith's death. In fact, the letter says that Judith's funeral was scheduled for the same date as the return date. However, it is unclear when the court received this letter. The letter bears two file stamps—one of December 26 (before the return date) and one of January 2 (after the return date).

¶ 14. Steffen appeared at the December 30, 1996 return date, but Vernon did not. Steffen advised the small claims court that the Luechts had vacated the

premises. The minutes of the proceeding show that the court granted a judgment of eviction to Steffen and that the case was otherwise adjourned day to day on Steffen's claim for delinquent rent and additional damages. The court instructed Steffen to itemize his damages and provide copies to the Luechts and the court.[2]

¶ 15.   On January 28, 1997, Steffen filed his itemized damage claim with the small claims court, claiming damages in the amount of $3705. On February 19, Luecht responded by letter, disputing this claim. The case remained in legal limbo until September 1997 when Luecht, now represented by counsel, filed an answer and a counterclaim alleging that Steffen had wrongfully evicted him and Judith because Steffen had wrongfully insisted on payment of the full November rent. Luecht contended that he was entitled to abate the rent in the amount of the $75 plumbing bill. In February 1998, Luecht amended the counterclaim to allege a further claim for Judith's wrongful death. On February 20, the case was transferred to the large claims division of the Waukesha County Circuit Court.

¶ 16.   Following discovery, Steffen brought a motion for summary judgment. He first argued that the Luechts had not been evicted because they had voluntarily surrendered the premises, noting that the Luechts had not contested the eviction proceeding. Relying on the same facts, Steffen also contended the prior eviction judgment precluded Luecht from litigating the wrongful eviction claim via his counterclaim. In further support, Steffen argued that he had followed

[2] The original appellate record did not document the proceedings on the return date in the small claims court. We ordered Luecht to supplement the record with the minutes of that proceeding and he has done so.

the prescribed statutory procedures for terminating the tenancy. As to the wrongful death claim, Steffen argued that public policy precluded the action. He contended, "The attenuated link between cause and effect here makes Steffen's culpability wholly out of proportion to the defendant's injuries."

¶ 17.  The circuit court agreed with Steffen and dismissed Luecht's counterclaim. The court held that public policy precluded the wrongful death action. The court also held that, as a landlord, Steffen was entitled to bring an eviction action to regain possession of the property. The court did not address Steffen's argument that the prior eviction judgment barred the wrongful eviction claim or his further argument that the Luechts had not been evicted because they had voluntarily abandoned the premises.

## DISCUSSION

### 1.  Scope of the Circuit Court's Decision

¶ 18.  We first clarify the scope of the circuit court's decision. We do so because Steffen's motion and the proceedings based thereon did not clearly delineate whether the motion targeted both of Luecht's claims or only the wrongful death claim.

¶ 19.  Steffen's motion was labeled as one for partial summary judgment, targeted at the wrongful death claim. In support, Steffen set out his public policy arguments against the wrongful death claim. However, despite the label, other portions of Steffen's motion also challenged the wrongful eviction action. Steffen argued that the prior eviction judgment barred the wrongful eviction counterclaim on claim preclusion grounds. Steffen also argued that no action for wrongful eviction existed because the Luechts had not been

evicted—instead they had voluntarily abandoned the premises.

¶ 20. At the motion hearing, the parties and the circuit court stated a number of times that the motion was one for partial summary judgment. But, in fact, the arguments addressed both the wrongful eviction and the wrongful death claims. Steffen echoed the arguments made in his written motion and Luecht responded that the summary judgment record demonstrated material issues of fact as to both claims.

¶ 21. The circuit court ruled in favor of Steffen. The court's bench decision is devoted almost entirely to a discussion of the public policy factors bearing on the wrongful death claim, with the court ultimately dismissing this claim on public policy grounds. The court's decision does not expressly dismiss the wrongful eviction claim, and the only portion of the court's comments that arguably travel to this claim is the following:

> Whether we dispute whether a credit should have been given or not given, the matter that started was a legal action for establishing rights and remedy. The only way to gain possession of a property legally in the state of Wisconsin is an eviction action, as between a landlord and tenant.

¶ 22. Despite the court's failure to expressly dismiss this claim in its bench decision, the final written judgment dismisses Luecht's counterclaim in its entirety. We therefore construe the court's bench decision as traveling to both of Luecht's claims and we construe this appeal as bringing both claims before us.

## 2. Claim Preclusion

¶ 23. In his motion, Steffen claimed that Luecht's claims were barred under the law of claim preclusion.

As noted, the circuit court's decision did not address this argument. We have considered whether we should remand this case for a consideration of this issue. However, we conclude that the material facts on this question are not in dispute and that they do not support Steffen's argument for claim preclusion.[3]

¶ 24.  Claim preclusion involves a consideration of the following factors: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995).

¶ 25.  This case presents an intriguing question of whether there truly was a prior proceeding within the meaning of claim preclusion law. Steffen pled two causes of action in the small claims action—eviction and money damages. Although Luecht allowed a default eviction judgment to be entered against him because he did not appear on the return date, the case was not concluded with finality because Steffen's claim for money damages was still pending. In *Purdy v. Carroll*, 153 Wis. 2d 370, 372, 450 N.W.2d 807 (Ct. App. 1989), the court held that a writ of restitution in an eviction action was not an appealable final order in the face of a still pending counterclaim.

¶ 26.  More importantly, under the transactional analysis governing counterclaims, Luecht had the right to file a counterclaim. *See* WIS. STAT. § 802.07(1). Indeed, had he failed to do so, he would have lost that

---

[3] If the facts prove differently on remand for trial of the wrongful eviction claim, the circuit court is authorized to consider this issue further.

right. *See A.B.C.G. Enters., Inc. v. First Bank Southeast,* 184 Wis. 2d 465, 474, 515 N.W.2d 904 (1994).

¶ 27.   The "bifurcated" procedure in this case not only rendered the eviction judgment nonfinal because the claim for money damages was still pending, but it also triggered the "spin-off" of this case to the large claims court. Under these unique circumstances, we hold that the eviction portion of the proceedings was not a prior action for purposes of claim preclusion law. Nor was the eviction judgment a "final judgment" as envisioned by this law.

¶ 28.   Even if we were to hold otherwise, we still would reject Steffen's claim preclusion argument. Even where the threshold requirements of claim preclusion are satisfied, the ultimate application of the claim preclusion rests on an important additional factor—fairness. *See Desotelle v. Continental Cas. Co.,* 136 Wis. 2d 13, 21–22, 400 N.W.2d 524 (Ct. App. 1986). Here, the undisputed facts show that Luecht's failure to appear at the eviction hearing was due to Judith's death. In fact, the appearance date was the very date of Judith's funeral. Moreover, Luecht sent a letter to the court dated December 26 asking that the return date be adjourned. While the letter bears file stamps indicating receipt dates both before and after the return date, we nonetheless hold that Luecht acted in a timely manner since the letter was sent a mere three days after Judith's death. Under these circumstances, we hold as a matter of law, that it would be unfair to apply claim preclusion against Luecht. Thus, we move to the merits.

### 3. *Wrongful Eviction*

¶ 29.   Although the circuit court's bench decision did not discuss the wrongful eviction claim in detail, we read the court's limited remarks to hold that an eviction action is the proper method by which disputes between a landlord and tenant are resolved. As such, regardless of whether the Luechts were entitled to abate a portion of their rent, Steffen could not be liable for a wrongful eviction. We disagree with the court on both the law and the facts.

¶ 30.   First we address the law. Wisconsin case law has long recognized that a tenant is not liable for the payment of the full rent when the premises are uninhabitable. *See Pines v. Perssion*, 14 Wis. 2d 590, 597, 111 N.W.2d 409 (1961) ("Since there was a failure of consideration, respondents are absolved from any liability for rent under the lease and their only liability is for the reasonable rental value of the premises during the time of actual occupancy."). In *Dickhut v. Norton*, 45 Wis. 2d 389, 173 N.W.2d 297 (1970), the supreme court held that a tenant was allowed to raise a defense of retaliatory eviction in a landlord's eviction action. *See id.* at 399.

¶ 31.   These principles have now evolved into codified statutory law and administrative rules. WISCONSIN STAT. § 704.07(4) allows a tenant to abate rent "to the extent the tenant is deprived of the full normal use of the premises." WISCONSIN ADMIN. CODE § ATCP 134.09(5)(c) bars a landlord from terminating a tenancy in retaliation for the tenant's "[a]sserted, or attempted [assertion of] any right specifically accorded to tenants under state or local law." If the landlord acts in violation of these laws, the damages and penalties

set out in WIS. STAT. § 100.20(5) may be assessed. *See Paulik v. Coombs*, 120 Wis. 2d 431, 436, 355 N.W.2d 357 (Ct. App. 1984). Therefore, the circuit court incorrectly concluded that Steffen's eviction action was immunized as a matter of law from any claim of wrongful eviction by Luecht.

¶ 32. Next, we address the facts. While there is no dispute that the Luechts owed rent for the month of November, the facts establish that it was not until the middle of the month that Steffen contacted the Luechts and the other tenants with the necessary information and directives for the payment of the rent.[4] The rent check, less the plumbing bill, was mailed on November 20. We are not certain whether Steffen is claiming that the Luechts had not timely paid the rent. But if he is, an issue of fact exists as to that question.

¶ 33. Luecht's summary judgment evidence also showed that the clogged sink produced a backup of "black, smelly water" that was "unsanitary" and left a "very strong odor in the house." Again, we are not clear whether Steffen is challenging this condition. But if he is, a material issue of fact exists as to whether the premises were rendered "untenantable" within the meaning of WIS. STAT. § 704.07(4).

---

[4] At the summary judgment hearing, Steffen contended that the Hansens had told him that they had provided the tenants with his address prior to his letter to the tenants. But this was hearsay evidence. Summary judgment evidence must be on personal knowledge and set forth in such a manner as would be admissible in evidence. *See* WIS. STAT. § 802.08(3). Even if admissible, this evidence was countered by Luecht's evidence that Steffen's letter was the first directive to them as to where they should send the rental payments. Thus, a material issue of fact exists on this question.

¶ 34. The clearer factual dispute is whether Steffen agreed to allow the Luechts to abate the November rent to the extent of the plumbing bill.[5] Steffen claims that he did and cites to his offer to reimburse the Luechts by his separate check for the plumbing bill. Luecht, however, cites to his testimony that Steffen never made such an offer. This dispute cannot be resolved by summary judgment.

■

¶ 35. In summary, Luecht's claim for wrongful eviction is replete with material issues of fact. We reverse that portion of the summary judgment that dismissed this claim.

¶ 36. Steffen also contends that an eviction did not occur because the Luechts vacated the premises before the eviction judgment was issued.[6] But we see no basis for drawing a distinction between an eviction accomplished by judicial help or by self-help. The end result of eviction is the same under either scenario. One reasonable inference from the facts is that the Luechts vacated the property pursuant to the directive of Steffen's Notice To Quit Or Pay Rent or his later commencement of the eviction action, or both. Perhaps a trial will reveal that the Luechts vacated the property for reasons unrelated to this dispute. But the present state of the record does not permit us to say, as a matter of law, that the Luechts' departure from the premises was wholly unrelated to Steffen's actions.

---

[5] WISCONSIN STAT. § 704.07(4) provides that a tenant may not withhold the rent in full if the tenant remains in possession.

[6] At the summary judgment proceeding, Steffen incorrectly represented to the circuit court that the court commissioner dismissed the eviction action on the return date. As the minutes of the proceeding reveal, just the opposite occurred. The court issued an eviction judgment.

## 4. Wrongful Death

¶ 37. The circuit court dismissed Luecht's wrongful death claim on public policy grounds. Liability does not always follow when negligence, causation and injury are present. *See Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 737, 275 N.W.2d 660 (1979). In some cases, public policy considerations may preclude liability. *See id*. The following factors bear upon a public policy determination:

> (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Id*. The presence of any one of these factors is sufficient to bar recovery on public policy grounds. *See Rieck v. Medical Protective Co.*, 64 Wis. 2d 514, 518, 219 N.W.2d 242 (1974).

¶ 38. While these factors purport to be separate and discrete, some of them invoke overlapping considerations. For instance, the first four factors all require consideration of the linkage, if any, between the negligent act and the resulting harm. Here, there is no evidence showing that Steffen had any knowledge or suspicion that Judith had any health problems. His sole direct contact with Judith was the telephone call of November 19, 1996, in which he inquired about the

November rent and some keys left by some other tenants and stated that he would stop by the following day to pick up the keys and the rent. At this time, Steffen had not yet taken any legal steps to evict the Luechts. While the parties were in disagreement over the plumbing bill, there is nothing in the record that indicates that the disagreement was discussed during this particular conversation or that Steffen threatened Judith in any fashion.

¶ 39. Landlord-tenant disputes are commonplace, and, in its original stages, this case was no different. The parties simply disputed who was responsible for a $75 plumbing bill. Believing he was right, Steffen demanded full rent. Believing he was right, Vernon refused. Consistent with his belief, Steffen served a Notice To Quit Or Pay Rent on the Luechts and followed with a small claims action for eviction and money damages. Even if a trial ultimately proves him wrong, we cannot say that Steffen is fairly charged with apprehending that Judith's death was within the realm of expectant possible harm.

¶ 40. When making a public policy determination, we trace the consequences of one's negligent act, not indefinitely, but to a certain point. *See Conroy v. Marquette Univ.*, 220 Wis. 2d 81, 90, 582 N.W.2d 126 (Ct. App.), *review denied*, 221 Wis. 2d 653, 588 N.W.2d 631 (1998). We look to whether the challenged conduct would ordinarily result in consequences of such drastic proportion. *See id.* We hold, under the facts of this case, that: (1) Judith's death was too remote from Steffen's conduct; (2) Judith's death was too wholly out of proportion to any culpability of Steffen; (3) it appears too highly extraordinary that Steffen's conduct would have brought about Judith's death; and (4) allowance of

recovery would place too unreasonable a burden on Steffen. *See Morgan*, 87 Wis. 2d at 737.

## CONCLUSION

¶ 41.  We reverse the dismissal of Luecht's wrongful eviction claim and we remand for further proceedings on that matter. We affirm the dismissal of Luecht's wrongful death claim on public policy grounds.[7]

¶ 42.  Costs are not awarded to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

---

[7] Although we uphold the circuit court's dismissal of Luecht's wrongful death claim, we distance ourselves from certain of the court's reasoning. For instance, the court stated the claim should be barred because Judith was a smoker. In addition, the court appeared to fault Luecht for not producing expert medical testimony that Judith's death was linked to the eviction. But Luecht was responding to Steffen's motion for summary judgment. He did not move for summary judgment. Steffen's motion did not contend that smoking caused or contributed to Judith's death. Rather, Steffen contended that the claim should be barred on public policy grounds. It strikes us that the court was confusing the specific issue of causation with the broader issue of public policy.