Dora O. Alvarado and Lenny Gonzales, Jessica Gonzales, Billy Gonzales, Roberto Gonzales, by their Guardian ad Litem, Donald J. Murphy, Plaintiffs-Appellants,†

Partners Mutual Insurance, Subrogated Party-Plaintiff,

v.

Peter Sersch d/b/a D.P. Painters and Hastings Mutual Insurance, Defendants-Intervenors,

Oakbrook Corporation, ABC Unidentified Insurance Company, Meriter Retirement Services, Inc., and OHIC Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 01–1715. Submitted on briefs March 14, 2002.—Decided August 29, 2002.*

2002 WI App 227

(Also reported in 652 N.W.2d 109.)

† Petition to review granted 12-11-02.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Donald J. Murphy* of *Murphy Vaughan & Pressentin LLC*, Monona, and *Daniel W. Hildebrand* of *DeWitt Ross & Stevens S.C.*, Madison.

On behalf of the defendants-respondents Oakbrook Corporation, Meriter Retirement Services, Inc., and OHIC Insurance Company, the cause was submitted on the brief of *John A. Nelson* and *Timothy W. Feeley* of *von Briesen, Purtell & Roper, S.C.*, Milwaukee.

Before Vergeront, P.J., Deininger and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Dora Alvarado, Lenny Gonzales, Jessica Gonzales, Billy Gonzales, and Roberto Gonzales appeal a judgment and an order of the circuit court granting summary judgment in favor of defendants Meriter Retirement Services, Inc. and Oak-

brook Corporation.[1] Dora Alvarado worked for a cleaning company employed by Oakbrook, an apartment management company. While cleaning an empty apartment owned by Meriter and managed by Oakbrook, Dora Alvarado found and lit an explosive stick, thinking it was a candle. The explosion severely injured Alvarado's right hand. She and her children sued Meriter and Oakbrook claiming, among other things, common law negligence. The circuit court granted summary judgment against the plaintiffs based on the court's conclusion that Meriter and Oakbrook did not owe Alvarado a duty of care. While we employ a different analysis than the circuit court, we nonetheless affirm.

## *Background*

¶ 2. The pleadings, affidavits, and depositions on file reveal the following when viewed in a light most favorable to the nonmoving party. Meriter owns a multi-unit residential rental property located at 325 West Main Street in the City of Madison. Oakbrook manages twenty-four properties for Meriter, including the West Main Street property.

¶ 3. Many of the apartments managed by Oakbrook are occupied by University of Wisconsin students. Leases on these apartments generally run from August 15 of one year to August 14 of the next. Each year a high number of the apartments "turn over" during August. As apartments are vacated, an Oakbrook employee

---

[1] Summary judgment was also in favor of defendant OHIC Insurance Company, Meriter's liability insurer. The parties do not separately discuss OHIC as a defendant, and we follow their lead.

walks through the apartments to inspect them for damage and to determine whether any cleaning or repairs are necessary.

¶ 4. In August of 1998, Oakbrook employee Larry Keleher was responsible for overseeing 240 rental units. Between 150 and 175 of these units turned over between August 12 and August 15 of 1998. Oakbrook's "Operating Handbook" instructs employees to inspect apartments "thoroughly" and inspect all areas on a checklist. The checklist includes cabinets. Oakbrook does not have a hazardous materials policy and conducts no safety training for either its employees or its painting or cleaning contractors. Oakbrook's manual does, however, generally advise employees to be safety conscious. Its manual states: "Staff should put safety first at all times. Staff should use common sense to not engage in work which endangers the safety and health of themselves and others." Under the job description for various positions, including "property manager," the manual states: "Continually inspect property and improvements for curb appeal, protection of property value, and potential safety hazards."

¶ 5. On August 12, 1998, Keleher conducted a move-out inspection of apartment 303 at Meriter's West Main Street property. There is no evidence of complaints relating to the vacating tenant. During his inspection, Keleher did not see a firework device located in a wall-mounted cabinet in the kitchen. Keleher does not remember whether he opened any of the cabinets during his inspection.

¶ 6. The next day, August 13, three painters from D.P. Painters entered apartment 303 to paint at Oakbrook's request. While in the kitchen, one of the painters found in the kitchen cabinet what turned out to be an M-250 firework, an explosive device equivalent

756

to one-quarter of a stick of dynamite. The firework was about four inches tall and about an inch in diameter with a wick in the top. Statements regarding its color varied, but there was general agreement that it was white with either red and blue, or red or blue, stripes. At least one of the painters believed that the firework was a candle. Another painter, who had previously seen an M-80 firework, recognized the object to be a firework explosive device. The painters removed the firework from the cabinet, but left it in the apartment and did not notify Oakbrook.

¶ 7. The day after the painters left, August 14, Alvarado and her supervisor, Ron Boehm, employees of a janitorial service employed by Oakbrook, entered and began cleaning apartment 303. Boehm noticed the firework device on the windowsill and said to Alvarado something to the effect: "That's a strange looking candle." Boehm described the device as a wax candle with a red, white, and blue exterior.

¶ 8. Alvarado similarly believed the firework was a candle and decided she could use it to relight the pilot light on a gas stove in the apartment. Alvarado knew that when she cleaned the top of the stove with a vacuum, the vacuum would extinguish the pilot light. She had no matches and decided to light the "candle" from the pilot light, vacuum the oven, and then relight the pilot light with the candle. Alvarado lit the device and it exploded, blowing off most of her right hand. Prior to the accident, Alvarado had no experience with any firework-type device.

¶ 9. During his eleven prior years of employment with Oakbrook, Keleher had not discovered or heard of anyone discovering fireworks in a property managed by Oakbrook, but he did know that hazardous and flammable materials had been found in an occupied apart-

ment in 1996. There is no evidence that any abandoned firework had ever been discovered in a Meriter-owned or Oakbrook-managed apartment. Neither party presented evidence of the frequency with which hazardous materials are left behind by vacating tenants.

¶ 10. Alvarado filed suit against D.P. Painters, its insurer Hastings Mutual Insurance (hereafter D.P. Painters), and Oakbrook. Alvarado asserted claims of negligence, negligence per se, and violation of the Safe Place Statute. Alvarado's children, Lenny Gonzales, Jessica Gonzales, Billy Gonzales, and Roberto Gonzales, asserted a claim for loss of society and companionship.

¶ 11. Meriter, Oakbrook, and D.P. Painters filed motions for summary judgment. The circuit court granted the motions as to Alvarado's claims of negligence per se and violation of the Safe Place Statute. Alvarado does not object on appeal to that part of the court's ruling. The circuit court denied D.P. Painters' motion for summary judgment regarding common law negligence and this ruling is also not at issue. However, Alvarado does contest the circuit court ruling granting summary judgment in favor of Meriter and Oakbrook with respect to Alvarado's claim of common law negligence. The circuit court concluded that neither Meriter nor Oakbrook had a duty to inspect apartment 303 for explosive devices and, therefore, did not, as a matter of law, violate any duty to exercise reasonable care. Alvarado appeals this part of the court's ruling.

## *Discussion*

■

¶ 12. Alvarado argues that the circuit court erred when it granted Meriter's and Oakbrook's motions for summary judgment. We review summary judgment

decisions *de novo,* applying the same methodology as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). That methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk,* 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

¶ 13. Meriter and Oakbrook argue that they did not owe Alvarado a "duty of care" because they neither knew nor should have known of the presence of the firework. In other words, they argue the presence of the firework in the kitchen cabinet was not foreseeable. Alvarado counters that it is foreseeable that tenants, especially student tenants, may leave behind hazardous items and, therefore, Oakbrook had a duty to inspect the apartment for hazardous materials before allowing others, such as painters, cleaners, or new tenants, to work in or occupy an apartment. Meriter and Oakbrook argue, in the alternative, that public policy considerations should preclude liability.

■

¶ 14. In light of Wisconsin case law, it is understandable that the parties put forth "duty of care" arguments and treat these arguments as an analysis distinct from the legal question of whether public policy should preclude liability. However, recent pronouncements of the supreme court clarify that there is no longer a threshold legal "duty of care" question for courts to resolve. Rather, it is now clear that what Wisconsin courts have previously done under the rubric "duty of care" is make public policy decisions, and now clear that "duty of care" issues ought to be resolved in the context of public policy analysis.

¶ 15. Wisconsin cases routinely define common law negligence as being comprised of the following four elements: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *E.g., Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 259–60, 580 N.W.2d 233 (1998). The first element, "duty of care," has been treated as a threshold question of law. *E.g., Schicker v. Leick*, 40 Wis. 2d 295, 299, 162 N.W.2d 66 (1968). In this context, "duty of care" has been defined in terms of foreseeability:

> The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act.

*A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483, 214 N.W.2d 764 (1974); *see also Rockweit v. Senecal*, 197 Wis. 2d 409, 419–20, 541 N.W.2d 742 (1995); *Rolph v. EBI Cos.*, 159 Wis. 2d 518, 532, 464 N.W.2d 667 (1991).

¶ 16. We suspect this approach has caused confusion partly because the legal question of "duty" addresses the same foreseeability issue we ask fact finders to address in negligence trials. The Wisconsin pattern jury instruction on negligence defines "ordinary care" in terms of whether a person does, or fails to do, something that a reasonable person would recognize as

creating an unreasonable risk.[2] Stated differently, the fact finder is asked to determine whether a reasonable person would foresee an unreasonable risk. *See Rockweit*, 197 Wis. 2d at 423 ("Negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk of harm to others.").

¶ 17. This overlap between "duty of care" and the negligence question put to fact finders has led to the observation that the " '[duty of care] question is closely related to the question of whether a defendant is not negligent as a matter of law, *i.e.*, based on the facts presented, no properly instructed, reasonable jury could find the defendant failed to exercise ordinary care.' " *Id.* at 419 (quoting *Olson v. Ratzel*, 89 Wis. 2d 227, 251–52, 278 N.W.2d 238 (Ct. App. 1979)). The *Rockweit* court further observed that negligence is a question for the jury, and should be decided by the court as a matter of law before trial only in rare cases. *Rockweit*, 197 Wis. 2d at 419.

¶ 18. More to the point here, the "duty of care" question overlaps with Wisconsin's "public policy" considerations.

¶ 19. As with "duty of care," the question of whether public policy precludes liability is a question of law. *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d

---

[2] Wisconsin JI—Civil 1005 reads, in pertinent part:

> A person is negligent when [he or she] fails to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances. A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

723, 737, 275 N.W.2d 660 (1979). The public policy considerations that might preclude liability include: (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect, it appears too highly extraordinary that the negligence should have brought about the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; and (6) allowing recovery would enter a field that has no sensible or just stopping point. *Rockweit*, 197 Wis. 2d at 426.

¶ 20. Public policy considerations one and three in the above list encompass the issue of foreseeability. And, as explained above, foreseeability by a reasonable person is the essence of "duty of care." This overlap is exemplified by *Steffen v. Luecht*, 2000 WI App 56, ¶¶ 37–40, 233 Wis. 2d 475, 608 N.W.2d 713. In *Steffen*, we stated: "When making a public policy determination . . . [w]e look to whether the challenged conduct would ordinarily result in consequences of such drastic proportion." *Id.* at ¶ 40. We held, as a matter of public policy, that a landlord could not be held liable for the death of a tenant following a dispute over a $75 plumbing bill. *Id.* at ¶¶ 38–41. The tenant died eight days after vacating the apartment because of the dispute. *Id.* at ¶¶ 3–12. Without directly addressing whether the landlord was negligent, we held that the first four public policy considerations precluded liability in the wrongful death action because there was no showing that the landlord knew of the tenant's health problems and there was nothing to indicate he threatened her in any fashion. *Id.* at ¶ 38. We observed that landlord-tenant disputes are common, and the landlord pursued eviction believing he was right. *Id.* at ¶ 39. We

concluded that even if a trial ultimately proved the landlord improperly pursued eviction, "we cannot say that [the landlord] is fairly charged with apprehending that [the tenant's] death was within the realm of expectant possible harm." *Id.*

¶ 21. *Steffen* is noteworthy because this court could have addressed foreseeability in terms of "duty of care," but we chose instead to address it in the context of a public policy analysis. Moreover, we did so without presuming negligence on the part of the landlord. It is often repeated that even when the elements of a negligence claim have been established, a court may nonetheless preclude liability based on "public policy." *E.g., Miller*, 219 Wis. 2d at 264. However, we discern from *Steffen* that at least two public policy considerations (one and three) can sometimes be assessed without negligence as a presumed starting point.

¶ 22. Perhaps recognizing the potential for confusion and the redundancy of analyzing "duty of care" apart from public policy considerations, the supreme court has recently clarified in two decisions that "duty of care" should no longer be a distinct threshold legal inquiry, but instead a part of "public policy" analysis. We now turn our attention to those recent decisions: *Stehlik v. Rhoads*, 2002 WI 73, 253 Wis. 2d 477, 645 N.W.2d 889, and *Gritzner v. Michael R.*, 2000 WI 68, 235 Wis. 2d 781, 611 N.W.2d 906.

### Stehlik and Gritzner

¶ 23. In *Stehlik,* the supreme court addressed a negligence claim and was asked to resolve whether the owner of an all-terrain vehicle had a "duty" to "require a competent adult to take precautions for his or her own safety, such as wearing a helmet [while using the

all-terrain vehicle]." *Stehlik*, 2002 WI 73 at ¶ 52. The court declined to answer the question, explaining: "[I]n Wisconsin, common law limitations on liability are determined not by reference to the absence of a duty, but as a matter of public policy" because "[a]ll members of society are 'held, at the very least, to a standard of ordinary care in all activities.' " *Id.* (citations omitted). Accordingly, the supreme court went on to analyze the parties' arguments in terms of public policy considerations. *Id.* at ¶¶ 53–57.

¶ 24. *Stehlik* relied on *Gritzner*, 2000 WI 68, which makes the same point in a less direct manner: "Of course, even when a duty of care exists and the other elements of negligence have been established, public policy considerations may preclude liability. However, Wisconsin courts address public policy concerns directly, rather than asking whether the defendant owed a 'duty' to the particular victim." *Gritzner*, 2000 WI 68 at ¶ 24. While this statement in *Gritzner* might be read in isolation as distinguishing "duty to the particular victim" from "duty of care" more generally, the supporting footnote clarifies that the court is talking about the "duty of care" generally:

> As the defendant notes, some Wisconsin cases have examined liability limitations in terms of duty. *See Estate of Becker v. Olson*, 218 Wis. 2d 12, 579 N.W.2d 810 (Ct. App. 1998); *Zelco v. Integrity Mut. Ins. Co.*, 190 Wis. 2d 74, 527 N.W.2d 357 (Ct. App. 1994); *Erickson v. Prudential Property and Cas. Ins. Co.*, 166 Wis. 2d 82, 479 N.W.2d 552 (Ct. App. 1991). This formulation of the analysis is incorrect under Wisconsin law. In Wisconsin, everyone has a duty to act with reasonable care. Liability for breach of that duty is limited on public policy grounds. *See Rockweit v. Senecal*, 197 Wis. 2d 409, 425, 541 N.W.2d 742 (1995) (explaining that although some cases have denied liability on the basis that an actor

had no "duty" to the injured party, the decision to deny liability is essentially one of public policy and not duty or causation). *See also Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 644–45, 517 N.W.2d 432 (1994) (explaining that in deciding whether to impose liability for negligence, Wisconsin courts use a public policy formulation rather than a foreseeability or duty formulation) (citing *Klassa v. Milwaukee Gas Light Co.*, 273 Wis. 176, 183, 77 N.W.2d 397 (1956)); *Schuster v. Altenberg*, 144 Wis. 2d 223, 266, 424 N.W.2d 159 (1988) (Steinmetz, J., concurring) (noting that Wisconsin has a distinct approach to negligence under which liability is limited through policy considerations after the elements of duty and causation have been established); *Klassa*, 273 Wis. [] at 183 ("Whenever a court holds that a certain act does not constitute negligence because there was *no duty* owed by the actor to the injured party, although the act complained of caused the injury, such court is making a policy determination.").

*Id.* at ¶ 24 n.4.

¶ 25. What may not have been clear before has now been clarified in *Stehlik* and *Gritzner*. The same substantive legal question frequently analyzed in the past under the label "duty of care" should now be analyzed under the public policy framework. This does not represent a substantive change in the law. Parties may still make the same substantive arguments they have always made. Now, however, those arguments should be made in the context of public policy considerations. Accordingly, we will address the parties' dispute in that context.

*Public Policy Considerations*

¶ 26. Meriter and Oakbrook argue that public policy considerations preclude the imposition of liability. As previously noted, public policy considerations

765

that may preclude liability include: (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect, it appears too highly extraordinary that the negligence should have resulted in the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; and (6) allowing recovery would enter a field that has no sensible or just stopping point. *Gritzner*, 2000 WI 68 at ¶ 27. Meriter and Oakbrook assert that all of these considerations support summary judgment in their favor.

¶ 27. Alvarado contends there are factual disputes that preclude summary judgment. However, after carefully reviewing Alvarado's brief, we find that she alleges only one factual dispute. Alvarado asserts that the circuit court improperly determined an issue of fact when it "held that the purpose of Keleher's inspection was to determine if any amounts should be withheld from the vacating tenant's security deposit and to identify what repair work and painting and cleaning was required before the next tenant took possession." Alvarado argues that this finding is contrary to the instructions in Oakbrook's own "Operating Handbook" and argues that it is "for the jury to determine the purpose and adequacy of the inspection." However, we conclude there is no underlying factual dispute.

¶ 28. There is no dispute that Oakbrook's "move-out inspection" policy focuses on wear and tear, property damage, and refurbishing an apartment for new tenants. There is no mention of safety issues in this part of Oakbrook's manual. There is no dispute that other sections of Oakbrook's manual generally advise employees to be safety conscious. Finally, there is no

dispute that when Keleher inspected apartment 303, he failed to inspect the wall-mounted kitchen cabinet with sufficient care to discover the firework device. Apart from the general advisement in Oakbrook's manual regarding safety, Alvarado has not offered any evidence that Oakbrook's purpose when inspecting apartments includes detecting hazardous materials. Thus, we fail to discern a relevant factual dispute. To the extent Alvarado argues that a jury should have been allowed to decide whether Oakbrook *should* have had a policy directing its apartment inspectors to look for hazardous materials, she is not raising a factual dispute.

¶ 29. Although Meriter and Oakbrook assert that all of the public policy considerations listed in paragraph 26 above support summary judgment in their favor, we need only address considerations one (remoteness) and three (a result too highly extraordinary) to resolve this matter. As explained earlier in this opinion, both of these considerations encompass foreseeability.

¶ 30. Meriter and Oakbrook argue that it was not foreseeable that a cleaning person would be harmed if Oakbrook failed to specifically inspect apartments for hazardous materials. Meriter and Oakbrook point out that there is no allegation or offer to prove that landlords or property managers regularly find hazardous materials in vacated apartments. Meriter and Oakbrook also argue it was not reasonably foreseeable that a vacating tenant would leave behind fireworks. Alvarado counters that it is foreseeable that tenants, especially student tenants, will leave behind hazardous materials. Indeed, Alvarado is prepared to present evidence that, two years before the accident in this case, Oakbrook employees found toxic and noxious chemicals

in an occupied apartment.[3] Alvarado contends that because it was foreseeable that vacating tenants might leave behind hazardous materials, Oakbrook was negligent in failing to inspect apartment 303 for hazardous materials and in failing to instruct its painting contractor, D.P. Painters, on what to do if its employees discovered a dangerous object.

██

¶ 31. We acknowledge it is "usually better practice to submit the issues of negligence and causation to the jury before balancing various policy factors against a plaintiff's right to recover." *Olson*, 89 Wis. 2d at 253–54. However, the factual issues in this case are not so complex as to prevent a fair and complete evaluation of relevant policy considerations. *See id.*

¶ 32. In this case, there was no indication that the vacating tenant was a problem tenant. There is also no evidence that vacating tenants in general leave behind hazardous materials with any regularity. Oakbrook's prior experience with toxic chemicals did not involve a hazard left behind by a vacating tenant, but rather a hazard created by a current tenant who was apparently manufacturing illegal drugs. Moreover, hazardous materials would not typically pose a danger to employees of a cleaning company employed by Oakbrook because the nature of the hazard would be as apparent to the cleaning crew as it would be to Oakbrook's apartment inspector or to an employee of D.P. Painters.

¶ 33. Alvarado's reliance on Oakbrook's prior experience with toxic chemicals in an occupied apartment

---

[3] Unlike the circuit court, we consider this evidence for purposes of summary judgment. Accordingly, we need not address Alvarado's complaint that the circuit court erroneously "excluded" this evidence.

highlights a problem with Alvarado's assertion that a reasonable landlord would foresee unreasonable risk and always inspect for hazardous materials before allowing a contractor to enter an apartment to perform work. Absent knowledge or at least some sort of notice of a hazard or problem tenant, must Oakbrook either (1) inspect first, or (2) provide hazardous materials training to every plumber or electrician it hires because such contractors might encounter hazardous materials when working in occupied or unoccupied student apartments? Certainly not. Accordingly, we reject the unworkable suggestion that Oakbrook should have always either searched an apartment for hazardous materials or provided hazardous materials training to contractor employees before permitting a contractor in an apartment.

■

¶ 34. Finally, we observe that this case involves a very unusual hazard: an explosive firework that, to someone unfamiliar with such devices, might appear to be a candle. The harm to Alvarado is tragic, but it is, under any reasonable view, a highly extraordinary result of Oakbrook's failure to anticipate and remove the hazard. Similar to our conclusion in *Steffen*, we conclude here that we cannot say that Meriter and Oakbrook are fairly charged with apprehending that Alvarado's injury was "within the realm of expectant possible harm." *Steffen*, 2000 WI App 56 at ¶ 39. As a matter of public policy, liability is precluded because the harm to Alvarado was too remote from the alleged omission on the part of Oakbrook and it was too highly extraordinary that Oakbrook's omission would result in the harm.

¶ 35. At the same time, we stress that our holding is case-specific. This case involves a highly unusual

cause of an injury to a cleaning person employed by a contractor. We do not hold that landlords have no obligation to assure that apartments are hazard-free prior to the time new tenants take occupancy. Neither do we suggest that landlords never have an obligation to search for hazardous materials. To take one of many possible examples, it might be that a landlord could be found negligent and held liable for failing to inspect for hazards if the landlord knew a vacating tenant was involved in the reckless use of firearms. Given this knowledge, the landlord might properly be held liable for permitting new tenants with children to take occupancy without a thorough inspection.

¶ 36. Because we affirm the circuit court, we need not address Meriter's and Oakbrook's alternative argument that Alvarado's negligence exceeded that of any of the defendants as a matter of law. We also need not address Meriter's argument that the circuit court properly granted summary judgment in favor of Meriter on the ground that Meriter, as distinguished from Oakbrook, did not do or fail to do anything that would provide a basis for a finding of negligence.

*By the Court.*—Judgment and order affirmed.