Patricia LEMKE-WOJNICKI, Plaintiff-Appellant,†

MIDWEST SECURITY INSURANCE COMPANY, Wisconsin Physicians Service Insurance Corporation, and WEA Insurance Corporation, Involuntary-Plaintiffs,

v.

Paul & Cindy KOLODZIAJ, d/b/a Dubay Sport & Marine and Transportation Insurance Company, Defendants-Third-Party Plaintiffs-Respondents,

v.

Henry G. WOJNICKI, Jr., Third-Party Defendant.

Court of Appeals

*No. 02–1136. Submitted on briefs October 21, 2002.—Decided November 12, 2002.*

2002 WI App 316

(Also reported in 655 N.W.2d 212.)

† Petition to review denied 1-17-03.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Gregory J. Strasser* of *Strasser & Yde, S.C.* of Wausau.

On behalf of the defendants-third-party plaintiffs-respondents, the cause was submitted on the brief of *David J. Farley* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Patricia Lemke-Wojnicki appeals a summary judgment in favor of Paul and Cindy Kolodziaj, d/b/a DuBay Sport and Marine (DuBay). The trial court granted DuBay's summary judgment motion after determining DuBay did not breach its duty of care to Lemke after DuBay reattached a faulty steering mechanism to a new engine it installed on her husband Henry Wojnicki's boat. Specifically, the court determined DuBay was not negligent because it told Wojnicki of the faulty steering mechanism and Wojnicki said he would repair it himself. On appeal, Lemke argues DuBay did have a duty to her and its warning to her husband was inadequate to excuse its negligence. We determine DuBay did not breach any duty to Lemke under the facts presented and therefore affirm the summary judgment.

## BACKGROUND

¶ 2. In spring 1996, Wojnicki bought a thirty-two-year-old boat. That autumn the boat's motor broke while in use. He initially took the boat to Ford Fremont Marine, who advised the motor was beyond repair. In April 1997, Wojnicki purchased a new motor from DuBay and had DuBay install the motor. While DuBay's mechanic was installing the motor, he discovered the boat's steering cable was worn. The mechanic attached the worn cable to the new engine.

¶ 3. Ron Walters, DuBay's salesman, told Wojnicki not to operate the boat because it was dangerous to operate with the defective steering cable. Walters told Wojnicki that DuBay could repair the steering cable for an additional $500. Wojnicki declined, believing Walters was trying to sell him something he did not need, and said he would take care of it himself. Walters added the following to Wojnicki's invoice: "I told customer about steering cable that is on the boat. It is not safe to run the boat with it. He said he would purchase a new system himself and install it."

¶ 4. Wojnicki next used his boat on June 22, 1997. He, Lemke, and a friend went boating on the Wisconsin River near Stevens Point. The steering cable broke shortly after Wojnicki put the boat in the water. The boat went into a hard turn, throwing Lemke from the boat. The motor's propeller hit her, injuring her arm and shoulder.

¶ 5. Lemke brought suit against DuBay alleging it was negligent in allowing Wojnicki to take possession of the boat with this defect. Lemke argued DuBay could have refused to install the motor when Wojnicki declined to authorize the steering cable's repair, not attached the cable to the new motor, or performed the

repair and either billed Wojnicki or paid for the repair itself. DuBay joined Wojnicki as a third-party defendant and moved for summary judgment arguing it was not negligent because it had no duty to repair the steering cable without authorization, it warned Wojnicki of the defect, told him it was unsafe to operate the boat with the defect and did not perform any work on the cable. The trial court granted DuBay's motion and Lemke appeals.

## DISCUSSION

¶ 6. We review a decision granting summary judgment de novo, applying the same methodology as the trial court. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48 (Ct. App. 1994). Summary judgment is appropriate if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. *See id.* at 372–73. The existence of a duty presents an issue of law. *Lisa's Style Shop v. Hagen Ins. Agency*, 181 Wis. 2d 565, 572, 511 N.W.2d 849 (1994).

¶ 7. Wisconsin cases define common law negligence as being comprised of the following four elements: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 259–60, 580 N.W.2d 233 (1998). The question of the defendant's duty of care is analyzed under substantive law as well as within a public policy framework. *See Alvarado v. Sersch*, 2002 WI App 227, ¶ 25, 652 N.W.2d 109. In *Alvarado*, we clarified the approach courts should take

in determining a defendant's duty of care. *Id.* Traditionally, courts approached the question of duty in terms of foreseeability. *Id.* at ¶ 15. In *Alvarado*, we determined, based on our supreme court's recent pronouncements, that the defendant's duty of care is best resolved in the context of a public policy analysis. *Id.* at ¶ 14.

¶ 8. The factors we consider in a policy analysis are the same used to excuse defendants from liability despite their negligence. *Id.* at ¶ 19. These factors include whether: (1) the injury is too remote from the negligence; (2) the injury is wholly out of proportion to the tortfeasor's culpability; (3) in retrospect, it appears too highly extraordinary that the negligence should have resulted in the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; and (6) allowing recovery would enter a field that has no sensible or just stopping point. *Id.* at ¶ 26. The first and third public policy considerations reflect the traditional foreseeability analysis. *Id.* at ¶ 20. Foreseeability is part of the equation used to determine a defendant's duty, along with the other public policy considerations and substantive arguments. *Id.* at ¶¶ 20, 25.

¶ 9. Lemke argues DuBay should have anticipated some harm coming about as a result of reattaching the steering cable and therefore owed a duty to her. If reattaching the cable would have been the extent of DuBay's action, or if DuBay would have told Wojnicki the boat was safe to operate, we would agree with Lemke. DuBay, however, warned Wojnicki about the defect and offered to repair it. Wojnicki refused and told DuBay he would fix it himself. This undisputed fact,

analyzed within the public policy analysis, leads us to conclude DuBay did not owe Lemke the duty she claims.

¶ 10. Our primary reason for concluding this duty did not exist is the unreasonable burden it would place on DuBay. If we reverse the summary judgment, we would be determining DuBay could be liable for injuries resulting from the steering cable's defects despite (1) unambiguously informing Wojnicki of the defect and its seriousness, (2) offering to repair the defect, and (3) Wojnicki's representation that he would take care of the problem himself. This holding would greatly expand a mechanic's traditional duties. A mechanic has a duty to perform the authorized repairs with care, skill, reasonable expedience and faithfulness. *See Colton v. Foulkes*, 259 Wis. 142, 146, 47 N.W.2d 901 (1951). Further, a mechanic has the duty to exercise ordinary care and skill in detecting problems and making repairs. *See* Annotation, *Liability of garageman to one ordering repair of motor vehicle, for defective work*, 92 A.L.R.2d 1408, 1413–14 (1963). However, the mechanic may not make repairs beyond those ordered by the customer. *See id.* Implied in these duties is the duty to adequately apprise the customer of discerned problems so that he or she may make an informed decision about use and repairs. DuBay satisfied this duty to Wojnicki by alerting him to the problem. This, along with Wojnicki's assurance he would fix the cable himself, fulfilled any duty DuBay had to anyone else who could be injured by the defect. Allowing DuBay to be held liable for injuries resulting from something it was not authorized to repair and had warned the customer about would create an unreasonable burden.

¶ 11. We also determine imposing liability on DuBay would open the door to much greater liability for mechanics, entering a field with no just stopping point. Mechanics could become liable for failing to make repairs even though their customers insisted the repairs not be performed. It is perhaps common for a mechanic's customers not to have all the recommended repairs made to whatever product he or she is having fixed. Imposing liability for injuries suffered as a result of these unfixed problems would create a burden on mechanics to make the repairs, regardless of the customer's authorization. Mechanics would most likely be barred from performing or charging for these repairs. *See* WIS. ADMIN. CODE § ATCP 132.02 (motor vehicle mechanics may not make unauthorized repairs), § ATCP 132.09(4)(e) (motor vehicle mechanics may not demand or receive payment for unauthorized repairs). By the same token, this increased liability might encourage mechanics to limit their inspections to avoid detecting repairs. Imposing liability in this situation would place mechanics in a no-win situation and it would be unjust to hold mechanics liable for injuries resulting from defects they were not allowed to repair.

¶ 12. Finally, we conclude DuBay should not be exposed to liability because in retrospect it seems extraordinary DuBay's actions would have resulted in Lemke's injuries. While we do not doubt DuBay knew an injury could easily occur as a result of the defective cable, the subsequent warning to Wojnicki and his assurance of repair made it seem unlikely to DuBay that an injury would occur. After speaking with Wojnicki, it would be unfair to expect DuBay to foresee some injury resulting from allowing him to take the boat home with a defective steering cable.

958

¶ 13. The rationale in *Jewell v. Dell*, 284 S.W.2d 92 (Ky. Ct. App. 1955), supports our conclusion. There, Hubbard, a truck driver, stopped at Stitch's garage to have his brakes inspected after he noticed they were not functioning properly. *Id.* at 94. After inspecting the truck, Stitch informed Hubbard there were several problems with the brakes. *Id.* Although he performed some minor work on the brakes, Stitch said the truck would have to "have a major job done" in order to make the brakes fully functional. *Id.* Hubbard informed Stitch, "I will make it O.K.," continued driving, and was in an accident four miles from the garage. *Id.* The Kentucky Court of Appeals upheld the trial court's directed verdict finding Stitch not liable. *Id.* at 96. It reasoned that an action for negligence against a mechanic rests in part on his or her assurance, express or implied, that the machine repaired was safe for operation when in fact it was not. *Id.* The court noted the opposite was true in this case; the mechanic had made no such assurance to Hubbard and could not be held liable for the accident. *Id.* Similarly, DuBay never made any express or implied statement the boat was safe to operate. To the contrary, it told Wojnicki not to operate the boat because the steering cable was defective. Under these facts, DuBay cannot be held liable.

¶ 14. Lemke also challenges the sufficiency of the warning given, arguing DuBay should have informed Wojnicki what could happen if the steering failed. However, we conclude the undisputed evidence submitted in support of summary judgment shows that DuBay gave Wojnicki an adequate warning. The invoice stated the boat was not safe to operate. At his deposition, Walters testified he told Wojnicki not to operate his boat, that it was dangerous, and that he could lose his

steering. Wojnicki admitted at his deposition that Walters said not repairing the cable would be "potentially dangerous." Because we are reviewing a summary judgment motion, we consider this deposition testimony undisputed. *See Spring Green Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). In *Jewell*, Hubbard also argued Stitch's warning was inadequate, contending Stitch had to say the brakes were completely broken in order to avoid liability. *See Jewell*, 284 S.W.2d at 96. The court rejected this argument, saying the truck driver admitted he knew the brakes were not in perfect shape and further repairs were necessary. *Id.* While DuBay did not tell Wojnicki exactly what could happen as a result of the defective cable, by Wojnicki's own admission it did warn the defect was "potentially dangerous." This warning was sufficient to advise Wojnicki of the danger of operating his boat with the defective cable. It satisfied DuBay's duty to warn Wojnicki of the danger and fulfilled any duty DuBay had to any person who could be injured by the defect.

¶ 15. Nor are we persuaded by Lemke's argument the warning must be the equivalent of a valid liability release in order for DuBay to avoid liability. She points to *Yauger v. Skiing Enters., Inc.*, 206 Wis. 2d 76, 557 N.W.2d 60 (1996), where the supreme court invalidated a liability release because it did not "clearly, unambiguously, and unmistakenly" express the intention to waive liability. *Id.* at 88. Lemke argues DuBay's warning must meet this standard. We disagree. The issue before us is the existence and scope of DuBay's duty to Lemke. We have concluded DuBay did not owe Lemke the duty she claims. Therefore, whether there was a waiver of that liability for a breach of that duty, either by Wojnicki or Lemke, is irrelevant.

¶ 16. The duty of any defendant is often described as the duty to act with reasonable care under the circumstances. *McNeese v. Pier,* 174 Wis. 2d 624, 631, 497 N.W.2d 124 (1993). We conclude DuBay did that by clearly informing Wojnicki of his boat's defective steering cable. To hold DuBay liable for injuries resulting from that defect after Wojnicki said he would repair it himself would violate the public policy principles that serve as our negligence law's foundation.

*By the Court.*—Judgment affirmed.